UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ESTATE OF RONALD ALEXANDER HOWARD, II ,
DECEASED, BY: CATHY PACK                                    .
PERSONAL REPRESENTATIVE,                     CASE NO: 3:17-cv-778-J-34JBT

                        Plaintiff,          **1ST AMENDED
                                            COMPLAINT  AND
v                                           DEMAND FOR JURY TRIAL**

DR. MARTIN I. HOLZMAN, MD;
DR. VERNON P. MONTOYA, MD;
DR. JOSEPH FARES, MD/ENT;
ROBERT E. SMITH, JR.-WARDEN-
RMC, RMC MAIN and RMC WEST;
WALT SUMMERS-WARDEN-Holmes
Correctional Institution;
JULIE L. JONES- Secretary of Florida
Department of Corrections;
CORIZON HEALTH INC., a Foreign Profit Corporation,
an Agent or Ostensible Agent of Florida
Department of Corrections;
DR. OLUGBENGA OGUNSANWO, MD-Assistant
Secretary of Health Services
DANIEL P. CHERRY-Regional Medical Director;
DR. TIMOTHY WHALEN, Director of Medical
Services;
THOMAS REIMERS, Health Service Director;
ERICH V. HUMMEL, Region 2 Director;
FLORIDA DEPARTMENT OF
CORRECTIONS, a public entity;
DR. MARIA J. GARCON, MD-Senior Physician;
DR. A.C. MALER, MD-Medical Director-RMC;
DR. S. RUIZ CORDERO, MD-Medical Director-Holmes
Correctional Institution;
Dr. N. ANANDIJIWALA, MD;
DR. A. YU., MD;   DR. OSCALADO CONTARINI, MD;
DR. J. SANCHEZ, MD; DR. D. VILCHEZ-Chief Health
Officer-Holmes Correctional Institution;
DR. E. PEREZ, MD-Medical Director, Chief Health Officer;

Page **1** of **49**

DR. M. GONZALEZ, MD;   DR. W. BELLZAIRE, MD;
DR. C. CALDRON, MD-MDH, Medical Director
in their official and individual capacities as an Agent
or Ostensible Agent of Florida Department of Corrections
Jointly and Severally,

_____Defendants._____

Geoffrey N. Fieger [297305]               Sean W. Drew (P33851)
**FIEGER, FIEGER, KENNEY**                 **DREW LAW OFFICE**
**& HARRINGTON, PC**                        Co-Counsel for Plaintiffs
Counsel for Plaintiffs                      Donahue Building
19390 West Ten Mile Road                    302 Sycamore Street
Southfield, MI 48075                        PO Box 880
 (248)-355-5555                             Niles, MI 49120
 (248)-355-0218-facsimile                   (269) 683-5121
 g.fieger@fiegerlaw.com                     (269) 683-2195- facsimile
                                            drewlawoffice@gmail.com

## <u>COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND JURY DEMAND</u>

> There is no civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint that is either pending, or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

NOW COMES, Plaintiff Estate of Ronald Alexander Howard, II, Deceased by Cathy Pack, Personal Representative of the Estate of Ronald Alexander Howard, II, Deceased, Marion County Probate Court 2017-CP-58, Letters of Administration dated January 18, 2017, by and through her attorneys, Geoffrey N. Fieger and Sean W. Drew, and for their complaint against Defendants jointly and severally, state as follows:

**PRELIMINARY STATEMENT**

1.     This is a civil rights action in which Plaintiff, Cathy Pack, as the duly appointed Personal Representative of the Estate of Ronald Alexander Howard, II, seeks relief and all damages that flow from Defendants' multiple violations of decedent, Ronald Alexander Howard's rights, privileges, and immunities as secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988.

2.     During the period between September 30, 2009 and July 14, 2015, Defendants owed the Plaintiff's decedent, a prisoner incarcerated at the Holmes Correctional Institution, a duty to protect him and provide medical care when needed.   In failing to do so, Defendants violated the rights of the Plaintiff's decedent to due process and to be protected against cruel and unusual punishment.   These violations were a proximate cause of the death of Ronald Alexander Howard, II and of the consequent damages to his estate.

3.     That Defendants knew or should have known on or before October 28, 2014 (date of ultrasound of soft tissue left neck) that Plaintiff had a very serious life threatening illness/condition requiring immediate treatment action, together with appropriate and necessary effective pain medication(s).   Plaintiffs condition was so obvious and evident from October, 2014 forward, that a lay person with no medical training would recognize the need for timely medical intervention by way of treatment was needed immediately.   Although Plaintiffs condition was open and obvious to even a lay person, no treatment by way of radiation therapy and/or chemotherapy or any combination thereof with or without surgery, was ever provided to Plaintiff.

Further, other than over the counter Ibuprofen, Plaintiff never received pain medication.   The Defendants turned a blind eye and allowed the squamous cell carcinoma to spread unabated, to the point Plaintiff became a quadriplegic and eventually the cancer spread to Plaintiffs brain, added thereto, Plaintiff was allowed to become malnourished and subject to sepsis infection. Plaintiff was 23 years old when he died on July 14, 2015.

4.      Plaintiff, Cathy Pack, is the mother of Ronald Alexander Howard, II whose death on July 14, 2015, was a proximate result of Defendant's deliberate indifference and unconstitutional failure to respond to his serious medical needs while he was a prisoner at the Holmes Correctional Institution, Reception and Medical Center (RMC), and Memorial Hospital of Jacksonville.

5.      On behalf of the Estate of Ronald Alexander Howard, II, as the Personal Representative thereof, Cathy Pack, seeks all relief appropriate and allowable resulting from the constitutional violations Defendants inflicted upon Ronald Alexander Howard, II.

6.      As part of the aforementioned relief, Plaintiff seeks damages for the Estate, including any and all damages recoverable under the Statutes of the State of Florida and under Federal claims, including but not limited to economic and non-economic damages, punitive damages and award of attorney fees and costs, and any further relief the Court deems proper.

## **JURISDICTION**

7.      This action arises under the United States Constitution, particularly under the provisions of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution under the laws of the United States, particularly under the Civil Rights Act, Title 42 of the United States Code § 1983 and 1988.

8.     This Court has jurisdiction to this action under the provisions of Title 28 of the United States Code § 1331 and 1343.

9.     Plaintiff brings suit against each Defendant in both their individual and official capacities.

10.    That all of the acts by Defendants as set forth herein, were executed by Defendants under the color of law and the pretense of the statutes, ordinances, regulations, laws, customs and usages of the State of Florida, and by virtue of the under the authority of Defendants' employment with the State of Florida.   The Florida Department of Corrections, is responsible for, and does in fact, hire, train, supervise, and discipline Department of Correction administrators, wardens, deputy wardens, correctional staff, medical vendors such as Corizon, medical personnel including physicians and registered nurses in the performance of their duties.

11.    Venue is appropriate in this judicial district pursuant to 28 U.S.C.§ 1391 (b)(1) and (2) and because all events and controversies occurred in this jurisdiction, primarily in Lake Butler, Union County location of Reception Medical Center and City of Jacksonville, Duval County, location of Memorial Hospital of Jacksonville.

12.    The amount in controversy exceeds Seventy Five Thousand and no/100 ($75,000.00) exclusive of Plaintiff's claims for costs, interest, and punitive damages.

## PARTIES

## PLAINTIFF

13.    Plaintiff, Cathy Pack, is the duly appointed Personal Representative of the Estate of decedent, the Estate of Ronald Alexander Howard, II, Marion County Probate File No.: 2017-CP-58, Letters of Administration, dated January 18, 2017.   Plaintiff is a resident of the City

of Ocala, County of Marion, State of Florida.

14.    That at all times relevant hereto, Plaintiff's decedent, Ronald Alexander Howard, II, was a citizen and a resident of Ocala, Marion County, State of Florida and of the United States of America and is entitled to all rights, privileges and immunities accorded to all citizens of the United States.

## DEFENDANTS

15.    Defendant, Warden Robert E. Smith Jr., for all times pertinent hereto, was the Warden of Reception Medical Center, hereinafter (RMC) Main and West, was, at all relevant times, employed by the Florida Department of Corrections hereinafter (FDOC) as the Warden of Reception Medical Center (RMC) Main and West as well as the secured medical ward at Memorial Hospital of Jacksonville and is, upon information and belief, responsible for the operation of Reception Medical Center (RMC) Main and West the operation of the secured medical ward at Memorial Hospital of Jacksonville and the supervision, training, discipline and other functions of Reception Medical Center (RMC) Main and West and the secured medical ward at Memorial Hospital of Jacksonville, employees, staff and/or agents, and ensuring that defendants enforced and abided by the policies and regulations of the FDOC and the State of Florida, and the United States.   In addition, Warden Smith's duties and responsibilities include the development and implementation of policies and procedures for the operation and management of Reception Medical Center (RMC) Main and West and the secured medical ward at Memorial Hospital of Jacksonville and its employees.   He is further responsible for the care, custody and protection of individuals including Ronald Alexander Howard, II.

16.    Defendant, Warden Walt Summers was, at all relevant times, employed by the

FDOC as the Warden of Holmes Correctional Institution and is, upon information and belief, responsible for the operation of Holmes Correctional Institution and the supervision, training, discipline and other functions of Holmes Correctional Institution's employees, staff and/or agents, and ensuring that defendants enforced and abided by the policies and regulations of the FDOC and the State of Florida, and the United States. In addition, Warden Summers' duties and responsibilities include the development and implementation of policies and procedures for the operation and management of Holmes Correctional Institution and its employees. He is further responsible for the care, custody and protection of individuals including Ronald Alexander Howard, II.

17.    Defendant, Julie Jones- Secretary of Florida Department of Corrections, was, at all relevant times, employed by the FDOC as the Secretary of Florida Department of Corrections and is, upon information and belief, responsible for the operations of the Florida Department of Corrections.

18.    Defendant Corizon Health Inc., hereinafter Corizon, is a for profit, foreign corporation; said corporation is registered in the State of Florida and further said Defendant provides medical services to inmates within the State of Florida Holmes Correctional Institution, RMC (Main and West) as well as the secured medical ward at Memorial Hospital of Jacksonville, *West v Atkins,* 487 U.S. 42 1988. Corizon is the agent or ostensible agent of FDOC for medical services to inmates such as Plaintiffs decedent.

19.    CT Corporation System is at all relevant times, the registered Agent for Defendant Corizon, 1200 S. Pine Island Rd., Plantation, FL 33324.

20.    That Defendant, Florida Department of Corrections, upon information and belief,

in approximately 2012, outsourced the Florida Department of Corrections prison inmate medical are to a third party medical vendor(s) to with Wexford Health Sources and Corizon Inc., Corizon, Inc., at all times/places pertinent hereto, supply health care to inmates in Central and Northern Florida, to wit: Holmes Correction, RMC, Main and West and secured ward at Memorial Hospital of Jacksonville.

21.     Defendant, Dr. Olugbenga Ogunsanwo, MD., for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Assistant Secretary of Health Services. Dr. Olugbenga Ogunsanwo is being sued individually and in his official capacity.

22.     Defendant, Daniel P. Cherry, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Regional Medical Director.   Daniel P. Cherry is being sued individually and in his official capacity.  Defendant Cherry has personal knowledge of Plaintiffs decedents medical condition when Dr. Krevfels telephoned by Defendant Cherry and/or spoke with him in person on or about November 11, 2014 to discuss Plaintiffs decedents urgent medial needs, the need for testing and referrals.

23.     Defendant, Dr. Timothy Whalen, MD., for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Director of Medical Services.   Defendant Whalen is the person responsible for the hiring, training and supervision of medical personnel (ie..physicians) delivering are to inmates within the Florida Department of Corrections.   Dr. Timothy Whalen is being sued individually and in his official capacity.

24.     Defendant, Thomas Reimers, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Health Service Director.   Defendant Reimers is the person responsible for the hiring, training and supervision of medical personnel (ie..physicians)

delivering are to inmates within the Florida Department of Corrections.   Thomas Reimers is being sued individually and in his official capacity.

25.      Defendant, Erich V. Hummel, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Region 2 Director.   As Region 2 Director, Defendant Hummel is in charge of the day to day operation and running of the Reception and medical Center (RMC) Main and West Units and the secure ward at Memorial Hospital of Jacksonville.   Erich V. Hummel is being sued individually and in his official capacity.

26.      Defendant, Florida Department of Corrections (FDOC), is an agency formed pursuant to the laws of Florida, and one of the functions of the FDOC is to organize, train, operate and discipline administrators, staff correctional officers, medical vendors such as Corizon and medical personnel in correctional facilities, including the Holmes Correctional Institution. RCM and Memorial Hospital of Jacksonville.   The FDOC is also responsible for the development and implementation of policies and procedures for the operation and management of its facilities and its employees.   It is further responsible for the care, custody and protection of individuals including Ronald Alexander Howard, II.

27.      Defendant, Dr. Martin I. Holzman, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as a Physician in Medical Services.   It is understood that Dr. Holzman is Board Certified in Radiation Oncology.   Dr. Martin I. Holzman is being sued individually and in his official capacity.

28.      Defendant, Dr. Vernon P. Montoya, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as a Physician in Medical Services.   It is understood that Dr. Montoya is Board Certified in Oncology/Hematology.    Dr. Vernon P.

Montoya is being sued individually and in his official capacity.

29.     Defendant, Dr. Maria J. Garcon, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Senior Physician.   Dr. Maria J. Garcon is being sued individually and in her official capacity.

30.     Defendant, Dr. A.C. Maler, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Medical Director- RMC.   Dr. A.C. Maler is being sued individually and in his official capacity.

31.     Defendant, Dr. S. Ruiz Cordero, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Medical Director-Holmes Correctional Institution. Dr. S. Ruiz Cordero is being sued individually and in his official capacity.

32.     Defendant, Dr. N. Anandijiwala, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as a Physician in Medical Services.   Dr. N. Anandijiwala, is being sued individually and in his official capacity.

33.     Defendant, Dr. Joseph Fares, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as a Physician in Medical Services.    It is understood that Dr. Fares is Board Certified in Otolaryngology (ENT).    Dr. Joseph Fares, is being sued individually and in his official capacity.

34.     Defendant, Dr. A. Yu, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as a Physician in Medical Services.   Dr. A. Yu, is being sued individually and in his official capacity.

35.     Defendant, Dr. Oscalado Contarini, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as a Physician in Medical Services.   Dr.

Oscalado Contarini, is being sued individually and in his official capacity.

36.    Defendant, Dr. J. Sanchez, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as a Physician in Medical Services.   Dr. J. Sanchez, is being sued individually and in his official capacity.

37.    Defendant, Dr. D. Vilchez, MD, for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Chief Health Officer-Holmes Correctional Institution. Dr. D. Vilchez, is being sued individually and in his official capacity.

38.    Defendant, Dr. E. Perez, MD., for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Medical Director, Chief Health Officer.   Dr. E. Perez, is being sued individually and in his official capacity.

39.    Defendant, Dr. M. Gonzalez, MD., for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as a Physician in Medical Services.   Dr. M. Gonzalez, is being sued individually and in his official capacity.

40.    Defendant, Dr. W. Bellzaire, MD., for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as a Physician in Medical Services.   Dr. W. Bellzaire, is being sued individually and in his official capacity.

41.    Defendant, Dr. C. Caldron, MD/MDH., for all times pertinent hereto, was employed as an agent or ostensible agent of the FDOC as Medical Director.   Dr. C. Caldron, is being sued individually and in his official capacity.

## FACTUAL ALLEGATIONS REGARDING THE DEATH OF
## RONALD ALEXANDER HOWARD, II

**A.     PLAINTIFF'S REQUESTS FOR MEDICAL CARE/TREATMENT**

42.     That Plaintiff was sentenced in Marion County Court on September 18, 2009, on various felony charges.   Plaintiffs was assigned and lodged at Holmes Correctional Institution as an inmate until on or about November 17, 2014 when he was transferred to RMC for medical treatment.

43.     That while housed at Holmes Correctional Institution and/or RMC, Plaintiffs decedent issued the following forms:   Inmate Sick-Call Request and/or Inmate Request as follows:

-        6/3/14-   "Y'all charged me $5.00 dollars for no reason because I haven't been to medical since I renewed my shaving pass last year in October……"

         Response:   "Received, Reviewed and evaluated 5/30/14 Dental Sick Call"

-        7/15/14-   "Why do I half to write another sick call when I already wrote one last year and was charged already.   All I want to know is why having' I been to see the dr. and it's been 9 months since I put the sick call in"

-        8/29/14-   "I would like to know when I'm going to be put on the call out to see the Dr."

-        9/8/14-   "When am I going to see the Doctor" ……. "The left side of my neck is swollen and I can barely move it."

-        10/6/14-   "… Also my neck is still swollen and the pain has gotten terribly worser"

-        11/19/14-   "…and also the left side of my neck seems to be getting worse"

-        12/17/14-     "The swelling in my neck is spreading it is causing my whole body to ache"

-        2/17/15-     "The lump in my neck is spreading and also on the left side

of my neck a line of 4 lumps also on the back of my head and also my tongue and my throat swell up and I am coughing up blood.  And I'm losing my feeling in the left side of my body.   My body hurts real bad."

### B.   PLAINTIFFS MEDICAL HISTORY/CHART AT HOLMES, RMC AND MEMORIAL HOSPITAL OF JACKSONVILLE

44.     That Plaintiffs decedent, while housed at Holmes, was seen by Z. White, RN on September 19, 2014 at approximately 0940 for a sick call. Plaintiff's "description of the pain reflects sharp;    Location of the pain: Cervical region left;   Thoracic region left;   Is pain localized: no;   Does pain radiate: yes to shoulders;   does pain increase with activity: yes;   what activity: when turning head to the right side;   back muscle spasms: yes- neck spasms;   Objective-back exam swelling noted: yes;     where: swelling to left side of neck;   Ibuprofen 10 pack- 200 mg., heat packages x 5 days will evaluate, no improvement will refer to MD".

45.     Plaintiffs decedent appeared at the Holmes Correctional Health Unit on September 21, 2014 at 1400 hours and was seen again by Z. White, RN.   "Scheduling for MD evaluation, no improvement to edema in left side of neck.

46.     Defendant S. Ruiz-Cordero, MD, Medical Director, saw Plaintiffs decedent on September 23, 2014 at 1211:   prenotes his "left side of neck is swollen;   Objective:   I'm having pain on my neck;   Objective:   Muscle spasms"     Defendant S. Ruiz-Cordero, MD ordered CBD, Urine Dip, FSBS, Urine results under lab tab.   Defendant S. Ruiz-Cordero, MD also ordered cervical spine X-rays, "…demonstrate normal cervical lordosis.   The intervertebral disc spaces are well-preserved. There is no evidence of spondylolisthesis or acute bony injury.   The facet joints appear normal. The paravertebral soft tissues are unremarkable.   Prominent anterior spurring of C1."

47.    Inmate Sick-Call Request of 10/6/14-   "… Also my neck is still swollen and the pain has gotten terribly worser"

48.    Plaintiffs decedent appeared at the Holmes Medical Unit on October 7, 2014 at 10:15 per sick call "History of back problems:   yes;   What was the problem/diagnosis? Neck/muscle sprain;   What treatment did patient receive for previous back pain?   Flexeril; Chief complaint:   my neck is still swollen and it's worse;    When did current pain begin? September;   Description of pain: Aching;   Location of Pain: Cervical region, left, center;   What decreases or relieves the pain?   Flexeril did but after it was gone it comes back:   Back muscle spasms: yes;   Objective findings:   Back exam:   Swelling note:   yes, where:   Swelling to left side of neck noted.    Z. White, RN";   Plan:   "Scheduling for reassessment of neck;   Education: Continue stretching exercises."

49.    Plaintiffs decedent returned to Holmes Medical Clinic on October 8, 2014 at approximately 10:50, and was seen by Defendant, A. Yu, MD.   Subjective:   left side of neck pain;   Objective:   indurated mass along L sterno mastoid muscle towards the mastoid  end, approx. 1 ½" x 3", non tender but hard.    Non-movable, limited neck movements no carotid brunt, heart and lungs: 0;    Assessment:   R/O hematoma L sterno mastoid area (muscle);    Recheck neck mass L in 2 weeks.   C-spine XR report reviewed, C1 ant spurring (9/25/14),   A. Yu, MD."

50.    Plaintiffs decedent appeared on October 13, 2014 at the medical clinic and was seen by C. Pearson, LPN,:   "Subjective:   I need to be out of that kitchen;   Objective: … Mild swelling noted L side of neck. Seen and tx by M.D. on 10/8/14 for complaints.   Full ROM to neck/back Abd round and soft, BS active x all quads;   Assessment:   Requests day off from kitchen;   Plan: Not true emergency;   Sick call pin."

51.     That the following day of October 14, 2014 at 1715, Plaintiffs decedent appeared at the Medical Services of Holmes Correctional Institution with the chief complaint: "can't feel right arm: Pain level 8 out of 10, back of neck, left shoulder;  headache:  Findings:  All new onset neurological deficits/changes;   Plan:  Ultrasound left neck, f/u with MD tomorrow.   No work x3 by D. Bowden, RN;   viewed October 29, 2014 A. Yu, M.D."

52.   That Plaintiffs decedent on October 15, 2014 at approximately 1400, appeared at the Medical Services of Holmes Correctional Institution for a "F/U Mass Lt neck and rt arm numbness.  Subjective:  Right arm numb after pulling cart yesterday;  Objective: Alert NAD had knot in L side of neck from recent fall (end of September 2014) arm strength is intact. ROM is intact L neck knot is the same size – c/o pain mainly L shoulder and back (scagmilar) area;  Assessment:  muscle strain, knot L side of neck;   Plan: Ibuprofe, Flexeril, warm compresses, recheck neck, please do PPD asap (ordered last week), follow-up 3 weeks.   A Yu, MD"

53.     That Plaintiff decedent on October 20, 2014 at approximately 1200, appeared at the Medical Services of Holmes Correctional Institution,   "Chief complaint (in patient's own words):  The hole top half of my body hurts;   location where pain is the worse:  Neck/Head;  Does pain radiate? No;    Pain level- 8 out of 10;   Initial onset of pain:  Sudden;   Onset of pain:  months;  Onset of swelling: Months;    C Pearson, LPN"

54.     That Plaintiff decedent on October 21, 2014 at approximately 1350, appeared at the Medical Services of Holmes Correctional Institution, " Subjective: lump of neck as before;  Objective:  Head & Neck; L side neck mass  but still noticeable, no brunt;  Assessment:  left neck mass;  Plan:  decrease weight/exercise daily/decrease salt;   Referral made to Optometrist.  Z. White, RN and A. Yu, MD."   Plaintiffs decedent's weight was recorded as 191 lbs.

55.     That on October 28, 2014 the Ultrasound of the soft tissue left neck was undertaken per the order of D. Bowden, RN on October 14, 2014.   The radiology report, ultrasound of soft tissue of left neck reflected findings as follows:   "There are multiple nodules, with smooth borders, possibly lymph nodes measuring 2.0 x 1.1 x 1.5 cm, 1.8 x 1.2 x 1.9 cm, and 2.8 x 1.9 x 2.7cm.   No increase vascularity.   Impression:   The palpable mass most likely represents a complex cyst, possibly a necrotic lymph node.   Recommendation:   CT or MRI imaging of the neck without and with contrast."

56.     That Defendant, A. Yu, MD, saw Plaintiffs decedent on October 29, 2014 at 1400 hours.   "Neck ultrasound report noted, complaints of pain left shoulder and mass L neck, has been evaluated for the mass a few times.   C spine XR: C1 spurring shows unremarkable. Recent neck mass ultrasound reported possible complex cyst, necrotic lymph nodes PPD negative (10/19/14). Indurated mass was 1 ½" x 3", please follow up every week for progress of mass resolution if not resolving, may need CT or MRI as ultrasound report suggested.   A. Yu, MD"

57.     That Plaintiff decedent on November 11, 2014 at approximately 10:00 a.m, appeared at the Medical Services of Holmes Correctional Institution;   Impression:   enlarging of l neck mass;   Plan: Soft tissue CT neck;   CBC, CMP, HIV, EBV;   Refer to ENT or General Surgeon for biopsy; Begin trial antibiotics Keflex.   M. Krevfels, MD HCI.

58.     That M. Krevfels, MD   noted on November 11, 2014 at 1045, "spoke with Regional Medical Director, Dr. Cherry who concerns with probable diagnosis and diagnostic testing to include CAR, CT soft tissue neck, labs and   CT chest, if CAR suspicious, as well as transfer to Lake Butler for general surgeon consult, transfer to be classified as "Urgent".

59.     That on November 11, 2014, Dr. M. Krevfels, MD, completed the request for prior

approval health care services. Same was marked as Urgent (as opposed to routine or emergent). Diagnosis: Enlarging left neck mass, date of onset September 24, 2014.   Surgery procedure requested, CT soft tissue neck.   Refer to ENT or General Surgeon.

60.     Inmate Sick-Call Request- 11/19/14-   "…and also the left side of my neck seems to be getting worse"

61.     That on November 18, 2014, Plaintiffs decedent was examined by Defendant, Dr. Fares, ENT, Dr. Fares noted abnormal HEENT and abnormal neck with comments of "left tonsil lesion suspicious of malignancy rather than SCCA left neck metaphases;   Impressions:   Lt tonsil lesion;   Plan of Treatment:   Direct Lt BX excision Lt tonsil."   Dr. Fares did <u>not</u> undertake the excision until February 26, 2015, a passage of one hundred days.

62.     That on November 20, 2014, Plaintiffs decedent appeared at 1415 hours at the Medical Services of Holmes Correctional Institution:   Chief complaint:   Neck, shoulder pain;   When did symptoms first start? 3 months;   Current Symptoms: sore throat, tumor on L side of neck f/m came to RMC on medical 11/19/14 for this issue;   Objective: neck gland/s swollen: Yes, left.   E Walters, RN"

63.     Although recommended per the ultrasound of October 28, 2014, the CT of the neck was not ordered on November 11, 2014, and was not completed until November 21, 2014, a passage of 23 days. "Clinical data: Enlarging left neck mass.   New onset dyspnea. BUN 17/creatinine 1.05;   Prior studies:   Ultrasound of the thyroid/soft tissue neck 10/28/2014.   Radiograph of the cervical spine 9/25/2014;   Findings:   There are multiple enlarged enhancing nodules of the left neck.   The largest nodule individually measures 2.4 x 1.8 cm in size.   There is a conglomerate mass of enhancing nodules within the left neck measuring 6.0 x 2.2 cm in AP times

width dimension.   These appear to represent adenopathy.   There is no right neck adenopathy.   There is enlarged prevertebral soft tissue with narrowing of the oropharynx to 6.0 mL;   Impression:   1. Abnormal examination with extensive left neck enhancing nodules likely adenopathy.   There is prevertebral swelling with critical narrowing of the oropharynx as above.   Recommend additional evaluation with direct visualization. Clinical correlation."

64.     That the medical note of November 26, 2014, "patient to see Dr. Osbaldo Contarini, 11/25/14 by N. Anandijiwala, MD".

65.     That on November 24, 2014 at 1116 hours, Plaintiffs decedent appeared at the Medical Services of Holmes Correctional Institution complaining of "increased pain on left side of neck, swelling on left side of neck;   Plan: Follow up with Dr. Contarini, MD on November 25, 2014 concerning neck.   By S. Loznicki, RN"

66.     That Plaintiffs decedent was seen in surgery by Dr. Contarini, MD, on December 19, 2014; "Present Illness:   Large neck/mass;   Physical findings:   Possibly enlarged parotid gland;   Recommendations:   To MHJ special procedure dept, for core biopsy L neck mass ASAP, MTC—2 weeks, CT neck and chest.

67.     That on December 12, 2014, a Sonographic left neck mass fine needle aspiration biopsy was undertaken; "Procedure:   1.   Ultrasound guidance for needle placement; 2. FNA and core biopsy of a large left neck mass;   Impression:   1. Uncomplicated FNA and core biopsy of a large left neck mass."

68.     That the Surgical Pathology final diagnosis was issued on December 16, 2014, "Final Diagnosis:   Left neck mass, ultrasound guided core needle biopsy:   POORLY DIFFERENTIATED SQUAMOUS CELL CARCINOMA WITH EXTENSIVE TUMOR

Page **18** of **49**

NECROSIS".

69.     Inmate Sick-Call Request of 12/17/14- "The swelling in my neck is spreading it is causing my whole body to ache"

70.     That on December 30, 2014, A.C. Maler, MD JD, Medical Director, made medical appointment scheduled for January 6, 2015 for Plaintiffs decedent.

71.     That Plaintiffs decedent on December 31, 2014 at 1020 hours appeared at sick call "requesting for IBU due to pain of L mass on neck. Inform inmate of appointment with Dr. Contarini –SPGS he can discuss pain management IBU x 10 packs given.

72.     That on January 6, 2015, Plaintiffs decedent was seen in surgery by Defendant Dr. Contarini "Emergent to Fares MD for January 7, 2015 by Dr. Contarini, MD".

73.     That on January 7, 2015, inmate not seen in ENT Clinic.   Need to be rescheduled.

74.     That on January 9, 2015, Defendant, A.C. Maler, MD JD, Medical Director, made an appointment for Plaintiffs decedent for January 21, 2015.

75.     That Plaintiffs decedent was seen by Dr. Fares, MD, ENT on January 21, 2015. "Findings: left tonsillar mass with extension into the neck with a large neck mass obviously very suspicious of malignancy;   Schedule: direct biopsy 2/26/15.

76.     Inmate Sick-Call /Request of   2/17/15-   "The lump in my neck is spreading and also on the left side of my neck a line of 4 lumps also on the back of my head and also my tongue and my throat swell up and I am coughing up blood.   And I'm losing my feeling in the left side of my body.   My body hurts real bad."

77.     That on February 19, 2015 Plaintiffs decedent appeared at Medical call, "Chief complaint:   Hard time breathing;   Onset/Duration of symptoms:   Larynx CA;   Describe

Symptoms:   SOB (shortness of breath), chest tightness;   Cough:   productive;   Color: red;

Level of respiratory distress:   Moderate (appears SOB with talking);   Weight: 160 (weight

recorded 186 on 11/20/15);   Objective:   inmate complains of hard time breathing unable to eat;

Assessment:   ALT in pain and comfort 1/17/15 started cough blood.   Inmate states losing

strength left side;   Plan: urgent care to access inmate; inmate referred from sick call complaining

of shortness of breath upon exertion.   Staff nursing note reviewed agreed with assessment, D.R.

Pollard, PA-C"

78.   That on February 26, 2015, Plaintiffs decedent finally underwent surgery per

Defendant, Joseph Fares MD, ENT, for a direct laryngoscopy and biopsy of lesion.   The

Preoperative Diagnoses per Defendant Fares was "Left tonsillar mass with extension into the neck

with a large neck mass obviously very suspicious of malignancy."

79.   That as stated herein above, Plaintiffs decedent underwent ultrasound on October

28, 2014, followed 24 days later by CT of the soft tissue neck, followed up with neck fine needle

biopsy on December 12, 2014 and as stated, surgery on February 26, 2015.   A passage of 120

days, the ultrasound final results stated as follows: "Findings:   There are multiple nodules, with

smooth borders, possibly lymph nodes measuring 2.0 x 1.1 x 1.5 cm, 1.8 x 1.2 x 1.9 cm, and 2.8 x

1.9 x 2.7cm.   No increase vascularity.   Impression:   The palpable mass most likely represents a

complex cyst, possibly a necrotic lymph node.   Recommendation:   CT or MRI imaging of the

neck without and with contrast."   No treatment was provided to Plaintiff to shrink or control the

tumor(s) growth.   No pain medication was given other than over the counter Ibuprofen.

80.   That Defendant Fares noted in his Operative Report that he did a "rectangular

incision and removed the specimen…….   This lesion was very hard"   The punch biopsy's were

undertaken and sent to the pathologist for frozen section with a resulting determination by pathology, squamous cell carcinoma whereupon Dr. Fares completed the "Microlaryngoscopy and left tonsillectomy and biopsy of lesion, left posterior/lateral pharyngeal wall".

81.     That upon extubation, Plaintiffs decedent experienced some difficulty breathing, oxygen saturation started dropping, upon inspection, there was severe swelling of the uvula. Upon reintroducing general anesthesia, Plaintiffs decedent was again intubated, Plaintiffs decedent was subject to "acute severe angioedema of the uvula, which was about 2 to 3 inch long and 1 inch wide and with this clear appearance of angioedema." Epinephrine Xylocaine was injected directly into the Uvala followed by 8 mg of Decadron. After a short passage of time, the uvula did not shrink down, so Defendant Fares proceeded with the uvulectomy. Upon suturing, Plaintiffs decedent remained intubated.

82.     That on February 27, 2015, consultation requests for radiation therapy was made and signed by M. Gonzalez MD on March 2, 2015.

83.     That Plaintiffs decedent was seen on March 2, 2015 by Maria J. Garcon, M.D., Senior Physician RMC, wherein subjective complaint by Plaintiffs decedent as stated as "I am in pain".

84.     That Plaintiffs decedent was also seen on March 3, 2015 by Defendant Vernon Montoya, MD, Oncology/Hematology. Dr. Montoya issued a consult request to Dr. Martin Holzman. Dr. Montoya issued the consult request as Emergent, eval for radiation therapy of left pharynx mass, noting the size as 9x9cm.

85.     That Plaintiffs decedent was not seen by Defendant Holzman until March 11, 2015. Dr. Holzman's impression was Stage IVB SCCA of NPX/OPX with L N [3] disease. Dr. Holzman

recommended stain tissue, MRI brain/face/neck ASAP,  IV access port, ASAP, Dental clinic ASAP.   Now, r/o left internal capsule, r/o right 7th nerve compression, r/o intercranial extension, refer to neurology clinic ASAP, return for PET/CT (SIM & F/U of MRI).

86.     That Dr. Turner, III, DMD (dentist) completed his consult on March 17, 2015, having completed the "full mouth Xray and dental exam, patient has no teeth indicated for extraction pre-radiation head and neck."

87.     That Plaintiffs decedent was seen by Defendant Dr. Carlos Gama, MD, Neurologist on March 27, 2015, recommended MRI of brain, cervical spine with and without contrast, oncology consult, radiation therapy consult, strongly recommend transferring patient to MMC-ASAP.   Dr. Gama further noted discussed with Dr. Gonzales today March 26, 2016.

88.     That Plaintiffs decedent was transferred from RMC and presented at Memorial Hospital-Jacksonville on March 27, 2015 with reports of confusion and right sided weakness.

89.     That consult was had Dr. Maria Valente, MD on March 28, 2015 wherein she noted, "he was being set up for chemotherapy and radiation, was sent here for a PEG tube…..The patient essentially has paraspinal/epidural tumor spread from the primary head and neck malignancy with severe canal stenosis and cord compromise present from C2-C3-C7.   He also has been a chronic lymphadenopathy in the left neck." Which Dr. Valente previously noted, "extremely large left neck mass".

90.     That Defendant Joseph Fares, MD/ENT, had an additional consult on March 29, 2015 wherein he related, "I checked this mass, it was so large and going into the posterior part of the neck to be unoperable.   I recommended that we do give the patient radiation therapy up to 5000 rads and/or evaluate the patient at that time, if the tumor shrink down and becomes operable

and then the patient will continue the rest of his radiation therapy up to 6600 chemotherapy. Review of Systems:  Mostly negative except for what is stated above.  The patient seem to be deteriorating very rapidly and I believe he is a little bit leaner and loss some weight even the last few weeks since I did his biopsy.  Recommendation:  As recommended before for the cancer probably the patient should receive some radiation therapy, will make this tumor operable.  For the right Bell's palsy, the treatment should be supportive.."  No treatment was ever given to Plaintiffs decedent.

91.     That upon discharge on March 30, 2015, Hernan R. Chang, MD, stated, "He is scheduled to have chemo and radiation, as an outpatient….   This patient needs to receive chemotherapy and radiation as soon as possible.  Discharge Plan:  Discharge to RMC.  Follow up with Dr. Montoya as soon as possible for radiation treatment."

92.     That Jean Dure, Physician RMC requested consultation of Dr. Montoya, "need emergent consult for oncology for evaluation and treatment with Dr. Montoya.  Acuity of Consultation:  Emergency"   undersigned C. Calderon, MD MPH CCHP Medical Director RMC.

93.     That on March 31, 2015, Plaintiffs decedent presented to RMC Clinic, "please increase my pain meds".  Defendant, Maria J. Garson, MD, Senior Physician, noted Dr. Scibelli suggests to do radiation and chemo at RMC ASAP for squamous cell cancer State IV.  No pain mediation was provided other than over the counter Ibuprofen.

94.     Plaintiffs decedent was seen by Dr. Montoya, MD oncology/hematology on April 7th.  Weight is noted as 150 pounds.  Dr. Montoya notes under additional history, "seen by radiation therapy but due to the size of the tumor, radiation therapy is being held.  Assessment and Plan:  Will start him on chemotherapy, Carboplatin and Taxol for our weeks."

95.     That as of April 7, 2015, Plaintiffs decedent had lost 41 pounds, recorded weight on October 21, 2014 was 191, 21.46 percent drop in five months.

96.     That on April 13, 2015, Plaintiffs decedent was found on the floor at the RMC Medical Unit, altered mental status.   Upon arrival at Memorial Hospital-Jacksonville, Dr. Hernan R. Chang, MD, provided history and physical.   Dr. Chang noted "the patient that was seen at about 2 ½ weeks ago, here for changes in mental status.   Patient was seen by Neuro-Surgery, Oncology and ENT services and the patient was sent back to the RMC with the plan to have a chemotherapy or radiation therapy as soon as possible.   He was seen there by Dr. Hoffmann, Radiation Oncology and who did not want to start treatment due to the fact that the patient has extensive disease.   The patient had a Port-A-Cath placement a d was seen by Dr. Vernon Montoya at RMC for Oncology on April 7th which has not been started yet".

97.     That Plaintiffs decedent had further consult with Defendant, Joseph Fares, MD/ENT on April 13, 2015 wherein Dr. Fares stated, "I did have a long discussion with the patient, I did explain to him that we will/might given trigger radiation and chemotherapy and this tumor becomes small and resectable, I will have radiation stop at 5000, do surgery because the wound will still heal good at 5000 rads and will continue after this.   The patient after now, he has been seen but he did not stop having any radiation therapy or chemotherapy."

98.     That Dr. Hernan R. Chang, MD of Memorial Hospital-Jacksonville issued discharge of Plaintiffs decedent on May 22, 2015 putting him under brief hospital course. "Patient is a 23 year old African American male with a history of squamous cell carcinoma of the left neck, diagnosed a few months ago (December 2014 apparently), who was sent to the RMC and was supposed to have chemotherapy and radiation therapy, but this treatments did not take place."

Discharge diagnosis: included in part "Extensive metastatic squamous cell carcinoma of the left neck with metastasis to the cervical spine and epidural space;   Respiratory failure; Status post cardiopulmonary arrest;   Status post tracheostomy;   Quadriplegia probably related to growing of the neck tumor causing spinal cord compression;    Severe protein-calorie malnutrition; Methicillin-resistant Staphylococcus aureus pneumonia."

99.    That upon his return to RMC, Plaintiffs decedent was seen by Defendant, Vernon Montoya, MD on June 2, 2015.   Progress notes: "Mr. Howard was seen today for follow-up.   He was initially seen by me on 3/4/2015.   At that time, he was diagnosed with a large pharynx cancer. He was referred to radiation therapy.   Radiation therapy was not offered due to the massive tumor size.   He was again seen by me on 4/7/2015.   At that time, we planned to start him on Carboplatin and Taxol; however, he never received the chemotherapy.   Assessment and Plan:  Patient with markedly progressive disease. I doubt chemotherapy would be beneficial for this patient, I would recommend palliative care.   If he is eligible for early release, this should be considered.   We will see him on a prn basis."

100.    That there is no medical charting-records of any entries be it at RMC or Memorial Hospital or any other medical provider past June 3, 2015 forward to Plaintiffs arrival at Shands at University of Florida on the morning of July 6, 2015 at approximately 1010 a.m.

101.    That Defendants, Florida Department of Corrections and/or Defendant Corizon Inc., created and operates directly or through its agent, Defendant Corizon, at Lake Butler the RMC Cancer Treatment Center on or about December 2010 forward.

102.    That Defendants, Florida Department of Corrections and/or Defendant Corizon, Inc., had the ability given the physical facility (RMC Cancer Treatment Center) and the board

certified physicians necessary to medically treat Plaintiffs decedent in a timely and effective manner and yet did not provide **any** treatment.

103.     That the acts and/or omissions of Defendants, Florida Department of Corrections, Dr. Martin I. Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel Cherry,   Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero,   Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellzaire, Dr. C. Caldron and Corizon was excessive, unnecessary, reckless and in wanton disregard of Plaintiffs' decedent's constitutional right to receive medical care, Plaintiff experienced the loss of basic care, including but not limited to hydration, caloric intake, pain medication and treatment of diagnosed serious medical condition, the unwarranted and unconstitutional actions or omissions of Defendants, *supra*, caused Plaintiffs' decedent extreme physical and emotional pain and suffering, the actions were without regard to human dignity or presence, in violation of the provisions of the Eighth and Fourteenth Amendments to the United States Constitution.

104.     That Defendants, Florida Department of Corrections, Dr. Martin I. Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel Cherry,   Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero,   Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellzaire, Dr. C. Caldron and Corizon knew or should have known on or before October 28, 2014 (date of ultrasound of soft tissue left neck) that Plaintiff had a very serious life threatening illness/condition requiring immediate treatment action, together with appropriate and necessary effective pain medication(s).   Plaintiffs condition was so obvious and evident from late October, 2014 forward, that a lay person with no medical training would recognize the need for timely medical intervention by way of treatment was needed

immediately.   Although Plaintiffs condition was open and obvious to even a lay person, no treatment by way of radiation therapy and/or chemotherapy or any combination thereof with or without surgery, was ever provided to Plaintiff.   Further, other than over the counter Ibuprofen, Plaintiff never received pain medication.   The Defendants, *supra,* turned a blind eye and allowed the squamous cell carcinoma to spread unabated, to the point Plaintiff became a quadriplegic and eventually the cancer spread to Plaintiffs brain, added thereto, Plaintiff was allowed to become dehydrated, malnourished and subject to sepsis infection. Plaintiff was 23 years old when he died on July 14, 2015.

### C.   FLORIDA DEPARTMENT OF CORRECTIONS, ADMINISTRATORS OF FLORIDA DEPARTMENT OF CORRECTIONS, WARDENS OF HOLMES, WARDEN OF RMC/ MEMORIAL HOSPITAL OF JACKSONVILLE AND CORIZON

105.   Defendant Corizon Health Inc., hereinafter Corizon, is a for profit, foreign corporation; said corporation is registered in the State of Florida and further said Defendant provides medical services to inmates within the State of Florida Holmes Correctional Institution, RMC (Main and West) as well as the secured medical ward at Memorial Hospital of Jacksonville, *West v Atkins,* 487 U.S. 42 1988.   Corizon is the agent or ostensible agent of FDOC for medical services to inmates such as Plaintiffs decedent.

106.   That Defendant, Florida Department of Corrections, upon information and belief, in approximately 2012, outsourced the Florida Department of Corrections prison inmate medical are to a third party medical vendor(s) to with Wexford Health Sources and Corizon Inc., Corizon, Inc., at all times/places pertinent hereto, supply health care to inmates in Central and Northern Florida, to wit: Holmes Correction, RMC, Main and West and secured ward at Memorial Hospital of Jacksonville.

107.    That Defendants, Florida Department of Corrections and/or Defendant Corizon Inc., created and operates directly or through its agent, Defendant Corizon, at Lake Butler the RMC Cancer Treatment Center on or about December 2010 forward.

108.    That Defendants, Florida Department of Corrections and/or Defendant Corizon, Inc., had the ability given the physical facility (RMC Cancer Treatment Center) and the board certified physicians necessary to medically treat Plaintiffs decedent in a timely and effective manner and yet did not provide **any** treatment.

109.    That Defendant, Florida Department of Corrections knew (through audits) as of September, 2014, that Defendant Corizon was failing to provide medical care and medical administration which was of the level of care which contractually required and of the level of care which met the requirements of the Eighth and Fourteenth Amendments to the United States Constitution.

110.    That Defendants, Florida Department of Corrections, Robert E. Smith Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon, knew or should have known that by September of 2014, there was a marked upward increase in grievances by inmates in Holmes, RMC (Main and West) and Memorial Hospital of Jacksonville, pertaining to health care, in spite of such knowledge said Defendants, *supra*, did not take timely action to correct, remedy the systemic failure of the prison health care system.

111.    That Defendants, Florida Department of Corrections, Robert E. Smith Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon, knew or should have known that by September of

2014, there was a marked upward increase in the upward number of inmate deaths in Holmes, RMC (Main and West) and Memorial Hospital of Jacksonville, pertaining to health care, in spite of such knowledge said Defendants, *supra*, did not take timely action to correct, remedy the systemic failure of the prison health care system.

112.    That Defendants, Florida Department of Corrections, Robert E. Smith Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon, knew or should have known that by September of 2014, that there was a marked decrease in the number of inmate medical transfers to outside medical facilities in Holmes, RMC (Main and West) and Memorial Hospital of Jacksonville, pertaining to health care, in spite of such knowledge said Defendants, *supra*, did not take timely action to correct, remedy the systemic failure of the prison health care system.

113.    That Defendants, Florida Department of Corrections, Robert E. Smith Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon, knew or should have known that by September of 2014, there was a lack of medical (physicians) staffing resulting in decreased quality of health care services to inmates with resulting increase in wait time or delay of medical treatment.

### COUNT 1

### VIOLATION OF CIVIL RIGHTS PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION AND 42 U.S.C. §1983 – DR. MARTIN I. HOLZMAN, DR. VERNON P. MONTOYA, DR. JOSEPH FARES, DANIEL CHERRY. DR. MARIA J. GARCON, DR. A.C. MALER, DR. S. RUIZ CORDERO, DR. N. ANANDIJIWALA, DR. A. YU, DR. OSCALADO CONTARINI, DR. J. SANCHEZ, DR. D. VILCHEZ, DR. E. PEREZ, DR. M. GONZALEZ, DR. W. BELLZAIRE, DR. C. CALDRONand CORIZON

114.    Plaintiffs herby reassert and re-allege each and every allegation contained in

paragraphs 1-6- "Preliminary Statement;  7-12- "Jurisdiction";  13-14- "Plaintiff";  15-41-

"Defendants";  42-43- "Factual Allegations...A- Plaintiff's request for medical care/treatment";

44-104- "Factual Allegations… B- "Plaintiff's medical history/chart at Homes, RMC and

Memorial Hospital of Jacksonville" and 105-113 - "Factual Allegations… C- Florida Department

of Corrections, Administrators of Florida Department of Corrections, Wardens of Holmes,

Warden of RMC/Memorial Hospital of Jacksonville and Corizon"   as though fully set forth

herein.

115.    That acts and omissions of any actions by Defendants, Dr. Martin Holzman, Dr.

Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr.

S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D.

Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon, hereinafter

referred to as Defendants in Count 1, in their individual and official capacities under the Eighth

and Fourteenth Amendments to the Constitution as well as 42. U.S.C. § 1983 and § 1988 were all

performed under the color of state law and were unreasonable and performed knowingly,

wantonly, with deliberate indifference recklessly, maliciously and with gross negligence,

callousness and reckless indifference to Plaintiffs decedents well being and serious medical needs

and in reckless disregard to Plaintiffs' decedent's safety, with wanton intent for decedent Ronald

Alexander Howard, II to suffer the unnecessary and reckless infliction of pain and suffering by the

failure to obtain medical treatment and failure to properly train, supervise, medical personnel and

develop and implement policies and procedures relating to the delivery of medical care to inmates

such as Plaintiffs decedent by reason of which Plaintiffs are entitled to compensatory and punitive

damages.

Page **30** of **49**

116.    That the conduct of each Defendant Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon, and all of its employees, agents/ostensible agents, were acting under the color of state law when they deprived Plaintiff's decedent of his clearly established rights, privileges, and immunities in violation of the Eighth Amendment of the Constitution of the United States, and of 42 U.S.C. § 1983 and § 1988.

117.    That the conduct of each Defendants, Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon,   was pursuant to, and in execution and implementation of, color of state law and officially sanctioned policies, ordinances, regulations or customs of Defendants, Florida Department of Corrections and/or Corizon, and each of the named Defendants, Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon.

118.    The Defendants, Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon exhibited deliberate indifference, pursuant to the Eighth and Fourteenth Amendments to the Constitution, to serious medical needs, to-wit:

a.      Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon, failed to determine and recognize the immediate need for medical attention and the danger of an inmate experiencing a severe physical/medical disorder and failure to obtain proper medical attention for a prisoner whose dire condition necessitated same.

b.      Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon, Recklessly, intentionally and/or willfully, and/or turning a blind eye, denying medical care to an inmate such as Plaintiffs decedent they knew needed serious medical attention.

c.      Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon, failed to provide necessary and required pain medication to Plaintiffs decedent to abate and control the severe and unremitting pain and resulting suffering Plaintiff experienced from November, 2014 to July 14, 2015 (date of death).

d.      That Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares,

Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N.

Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez,

Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon,

failed to obtain and expedite in a timely fashion the required diagnostic testing,

referrals which were requested and/or medically required, and institute

recommended treatment.

e.      That Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares,

Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N.

Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez,

Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon,

knew or should have known that Plaintiffs decedent was not receiving timely and

adequate medical care and treatment including but not lmited to pain medication,

hydration, caloric intake, diagnostic testing, treatment by radiation therapy,

treatment by chemotherapy, surgery, timely referral to specialist(s), timely referral

to a higher care outside medical facility, said Defendants, *supra* and should have

and are required to have report, communicated, demanded, through chain of

command (within the physician chain of command system, within the chain of

command of the prison administration,   within the chain of command within

Corizon administration, up to and including the Director of Florida Department of

Corrections), the medical care needs of Plaintiff and the short comings or failure to

deliver the same and continued such demand until such time as the appropriate

timely care was commenced and continued for the Plaintiff.

f.      That Defendants, Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph

Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero,

Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D.

Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and

Corizon, failing to affirmatively report up the chain of command, the medical needs

of Plaintiff and the demand that immediate correction action be taken, as outlined

in Paragraph 114-e, herein above said Defendant's were deliberately indifferent by

turning a blind eye to Plaintiffs decedent's serious medical needs.


g.      That Defendants Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares,

Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N.

Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez,

Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron, knew or should

have known that by September of 2014, there was a marked upward increase in

grievances by inmates in Holmes, RMC (Main and West) and Memorial Hospital

of Jacksonville, pertaining to health care, in spite of such knowledge said

Defendants, *supra*, did not take timely action to correct, remedy the systemic

failure of the prison health care system.

h.      That Defendants, Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares,

Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N.

Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez,

Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron, knew or should have known that by September of 2014, there was a marked upward increase in the upward number of inmate deaths in Holmes, RMC (Main and West) and Memorial Hospital of Jacksonville, pertaining to health care, in spite of such knowledge said Defendants, *supra*, did not take timely action to correct, remedy the systemic failure of the prison health care system.

i.   That Defendants Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron, knew or should have known that by September of 2014, that there was a marked decrease in the number of inmate medical transfers to outside medical facilities in Holmes, RMC (Main and West) and Memorial Hospital of Jacksonville, pertaining to health care, in spite of such knowledge said Defendants, *supra*, did not take timely action to correct, remedy the systemic failure of the prison health care system.

j.   That Defendants, Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron, knew or should have known that by September of 2014, there was a lack of medical (physicians) staffing resulting in decreased quality of health care services to inmates with resulting increase in wait time or delay of medical treatment.

119.    That Defendants individually, Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon and as agents for Defendants, Florida Department of Corrections personally participated in the implementation, execution and omission of the official policies, training, ordinances, regulations, and/or customs referred to above.

120.    That the Florida Department of Corrections and Corizon had a duty to adequately train and supervise; and all correctional administrators, correctional personnel, Corizon personnel and physicians, nurses and/or other medical personnel to properly care for, obtain medical treatment, supervise and provided care and treatment to decedent, Ronald Alexander Howard, II, in a manner that was not grossly negligent or that amounted to a reckless indifference to life.

121.    That Defendants Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon herein permitted the implementation of inappropriate de facto policies which reflected or represented policies, practices and customs which deviated form acceptable standards and were deemed acceptable by all Defendants, Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon.

122.    The unconstitutional conducts of the Defendants as alleged herein implemented

and executed the following policies and customs of these Defendants:

a.  Implicit authorization, approval and knowingly acquiescence in the wrongful conduct by said Defendants and/or their employees, agents or ostensible agents in the treatment of Plaintiffs decedent and/or other prisoners, so situated ;

b.  The use of and acceptance of unconstitutional withholding of medical care amounting to punishment of those suffering medical conditions by prison personnel;

c.  Failure to discipline or terminate prison or medical personnel known to have engaged in the, withholding of medical care, punishment of those suffering medical conditions, or other inappropriate practices and creating an atmosphere were prison and medical personnel believe they will not be disciplined for failure to provide timely and adequate medical care toward prisoners, Plaintiffs decedent in particular;

d.  Failure to eliminate prison policies, practices and customs which deviate from applicable federal and state standards for prison medical service operations;

e.  Failure to investigate, report and follow-up on prior incidents involving the failure to provide, medication; withholding of emergent, urgent or emergency medical care and continuing/ongoing life sustaining care by prison and medical personnel;

f.  Creating and encouraging secrecy and a code of silence within the State prison system, Corizon, medical vendor system, the medical care providers including but not limited to the named Defendant physicians;

g.  Insulating and protecting the personnel, Corizon, medical vendor system, medical providers from civil and criminal liability for the wrongful acts in the treatment of detainee-inmates.

h.  Ignoring the marked upward increase in grievances by inmates pertaining to healthcare.

i.  Ignoring the upward number of inmate deaths increasing,

j.  Ignoring the decrease in transfers to outside medical facilities,

k.  Ignoring the lack of medical staffing resulting in decreased quality healthcare services to inmates and increases wait time ie.. creates delay of

**Page 37 of 49**

treatment.

123.    That as a direct and proximate result of the wrongful conduct of Defendants named in Count I herein above, *supra*, as alleged herein, Plaintiffs have suffered and will continue to suffer a loss of love, affection, companionship, care, protection and guidance, and have suffered and will continue in the future to suffer pain, grief, sorrow, anguish, stress, shock and mental suffering.

124.    That pursuant to the provisions of 42 U.S.C. §1988, Plaintiffs are entitled to recover attorney fees and cost of litigation as to the causes of actions alleged under the Constitution and the laws of the United States.

125.    That as a proximate cause of Defendants acts and/or omissions, Plaintiffs suffered the following:

a.      Reasonable medical, hospital, funeral and burial expenses;

b.      Inhumane and tortuous conscious pain and suffering;

c.      Loss of financial support;

d.      Loss of service;

e.      Loss of gifts or other valuable gratuities;

f.      Loss of comfort, society and companionship;

g.      Loss of consortium;

h.      Economic and non-economic compensatory damages;

i.      Punitive damages;

j.      Any and all other damages including but not limited to both attorney fees recoverable under 42 U.S.C. §1983 and §1988 and any and all damages

otherwise recoverable under common law.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court enter a Judgment in their favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00 and award costs, interest, and attorney fees as well as Punitive and/or Exemplary damages.

## COUNT II

### VIOLATION OF CIVIL RIGHTS PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION AND 42 U.S.C. § 1983, 1988 FLORIDA DEPARTMENT OF CORRECTIONS, ROBERT E. SMITH, JR, WALT SUMMERS, JULIE L. JONES,   DR. OLUGBENGA OGUNSANWO, DANIEL P. CHERRY, DR. TIMOTHY WHALEN, THOMAS REIMER, ERICH V. HUMMEL AND CORIZON

126.   Plaintiffs herby reassert and re-allege each and every allegation contained in paragraphs 1-6- "Preliminary Statement;  7-12- "Jurisdiction";  13-14- "Plaintiff";  15-41- "Defendants";  42-43- "Factual Allegations...A- Plaintiff's request for medical care/treatment"; 44-104- "Factual Allegations… B- "Plaintiff's medical history/chart at Homes, RMC and Memorial Hospital of Jacksonville" and 105-113 - "Factual Allegations… C- Florida Department of Corrections, Administrators of Florida Department of Corrections, Wardens of Holmes, Warden of RMC/Memorial Hospital of Jacksonville and Corizon";

127.   That the acts and omissions of any actions by Defendants Florida Department of Corrections, Robert E. Smith, Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon in their individual and official capacities under the Eighth, and Fourteenth Amendments as well as 42 U.S.C. §1983 and §1988 were all performed under the color of state law and were unreasonable and performed knowingly, wantonly, deliberately, indifferently intentionally, maliciously, and with gross negligence, callousness, and reckless indifference to Plaintiffs' decedent in the

following manner: (a) his well being and serious medical needs;   (b) failure to properly train, supervise medical vendors, administrators and physicians, (c) Develop and implement policies and procedures for delivery of healthcare,   (d) The failure to initiate and conduct any meaningful investigation as to the failure to deliver medical care, and the death of Plaintiffs decedent; (e) the failure to train and discipline offending parties,   (f) To initiate and conduct any meaningful investigation and discipline offending parties. By reason of which, a-f Plaintiffs are entitled to compensatory and punitive damages.

128.    That the conduct of each Defendant, the Florida Department of Corrections, Corizon, Wardens and Administrators, Robert E. Smith, Jr-Warden; Walt Summers-Warden; Julie L. Jones; Corizon Health Inc.; Dr. Olugbenga Ogunsanwo, Daniel P. Cherry; Dr. Timothy Whalen; Thomas Reimers; Erich V. Hummel and Corizon; were acting under the color of state law when they deprived Plaintiffs' decedent of his clearly established rights, privileges and immunities in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States and of 42 U.S.C. §1983 and §1988.

129.    That the conduct of each Defendant named in Count II was pursuant to, and in execution and implementation of, color of state law and officially sanctioned policies, ordinances, regulations or customs of Defendants and each of the named Defendants.

130.    The Defendant Florida Department of Corrections and all Defendants named in Count II in both their personal and official capacities, condoned,   affirmed, and acquiesced to the intentional and wanton disregard of Plaintiffs' decedent's constitutional protections in the events preceding Plaintiffs' decedent's death and as well in the investigation following of Plaintiffs' decedent's death on July 14, 2015.

131.    That all Defendants named in Count II, *supra* in their personal and official capacities intentionally and with deliberate indifference turned a blind eye to inmates similarly

situated to Plaintiffs' decedent with regards to serious medical conditions and to this Plaintiff in particular.

132.    That Defendant Florida Department of Corrections, Robert E. Smith, Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon in their official and personal capacity obstructed and obviated the investigation which followed Plaintiffs' Decedent's death and in doing so, said Defendants were deliberately indifferent to Plaintiffs' Decedent's constitutional rights  and Plaintiffs' decedent's estate pursuing the constitutional remedies afforded under 42 U.S.C. §1983, Eighth and Fourteenth Amendments.

133.    That Plaintiffs' decedent was not provided with any medical treatment for his open and obvious serious medical condition to wit: squamous cell carcinoma and further, Plaintiffs decedent was not provided with pain medication.  With Defendants Florida Department of Corrections, Robert E. Smith, Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon having direct personal knowledge of Plaintiffs' decedent's  inability to care for himself or obtain assistance from others, thereby Defendants caused intentional infliction of pain and suffering, without due process, the foregoing is in addition to the deliberate indifference shown to Plaintiffs' decedent's medical needs.

134.    That the Defendants, Florida Department of Corrections, Robert E. Smith, Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon herein permitted the implementation of inappropriate de facto policies which reflected or represented policies, practices and customs which deviated from acceptable standards and were deemed acceptable by all Defendants.

135.    That the Defendant's named in Count II, *supra*, exhibited deliberate indifference per the Eighth and Fourteenth Amendments to the Constitution, to Plaintiff's decedents serious needs as follows to wit:

a.      Defendants, Florida Department of Corrections, Corizon, Robert E. Smith, Walt Summers, Julie Jones, Corizon Health inc., Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. timothy Whalen, Thomas Reimers and Erich V. Hummel and Corizon, failed to hire medical providers, specifically physicians, whose character and personality would not pose a potential danger to decedent, Ronald Alexander Howard, II.

b.      Defendants, Florida Department of Corrections and Robert E. Smith, Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon had a duty to train and supervise prison administrators as well as medical personnel physician and nursing staff at the Holmes, RMC (Main and West) and Memorial Hospital of Jacksonville to properly determine medical emergent, medical urgent and/or medical emergencies presentments and failed to do so and such omitted training and supervision was in willful and wanton disregard for decedent Ronald Alexander Howard, II's serious medical needs and was grossly negligent and a reckless act.

c.      Defendants, Defendants, Florida Department of Corrections, Corizon, Robert E. Smith, Walt Summers, Julie Jones, Corizon Health inc., Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas

Reimers and Erich V. Hummel, knowingly and recklessly failing to discipline, instruct, supervise or control, physicians, nurses and/or other medical administration, personnel conduct and thereby encouraging acts and omissions that contributed to the death of decedent, Ronald Alexander Howard, II, and other similarly situated inmates

d.      Knowingly and recklessly hired, trained and supervised, physicians, nurses and/or other medical personnel who are not able to determine serious medical conditions which render them unfit to perform the necessary duties of the position.

e.      That all Florida Department of Corrections, Corizon, Robert E. Smith, Walt Summers, Julie Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. timothy Whalen, Thomas Reimers and Erich V. Hummel, had a duty to adequately train and supervise; and all correctional administrators, correctional personnel, Corizon personnel and physicians, nurses and/or other medical personnel to properly care for, obtain medical treatment, supervise and provided care and treatment to decedent, Ronald Alexander Howard, II, that was not deliberately indifferent to Plaintiff that amounted to a reckless indifference to life.

f       Florida Department of Corrections, Robert E. Smith, Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon participated in creating and encouraging secrecy and a code of silence within the Florida Department of Corrections system, the medical vendor system and the

physicians, medical providers to insulate and protect themselves   and/or the Florida Department of Corrections and its medical vendor Corizon and physicians medical personnel from civil and criminal liability for the wrongful acts in the treatment of prison inmates.

g.    That Defendants, Florida Department of Corrections, Robert E. Smith Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon, knew or should have known that by September of 2014, there was a marked upward increase in grievances by inmates in Holmes, RMC (Main and West) and Memorial Hospital of Jacksonville, pertaining to health care, in spite of such knowledge said Defendants, *supra*, did not take timely action to correct, remedy the systemic failure of the prison health care system.

h.    That Defendants, Florida Department of Corrections, Robert E. Smith Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon, knew or should have known that by September of 2014, there was a marked upward increase in the upward number of inmate deaths in Holmes, RMC (Main and West) and Memorial Hospital of Jacksonville, pertaining to health care, in spite of such knowledge said Defendants, *supra*, did not take timely action to correct, remedy the systemic failure of the prison health care system.

i.    That Defendants, Florida Department of Corrections, Robert E. Smith Jr.,

Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon, knew or should have known that by September of 2014, that there was a marked decrease in the number of inmate medical transfers to outside medical facilities in Holmes, RMC (Main and West) and Memorial Hospital of Jacksonville, pertaining to health care, in spite of such knowledge said Defendants, *supra*, did not take timely action to correct, remedy the systemic failure of the prison health care system.

j.     That Defendants, Florida Department of Corrections, Robert E. Smith Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas Reimer, Erich V. Hummel and Corizon, knew or should have known that by September of 2014, there was a lack of medical (physicians) staffing resulting in decreased quality of health care services to inmates with resulting increase in wait time or delay of medical treatment.

k.     That Defendants Dr. Martin Holzman, Dr. Vernon P. Montoya, Dr. Joseph Fares, Daniel P. Cherry, Dr. Maria J. Garcon, Dr. A. C. Maler, Dr. S. Ruiz Cordero, Dr. N. Anandijiwala, Dr. A. Yu, Dr. Oscalado Contarini, Dr. J. Sanchez, Dr. D. Vilchez, Dr. E. Perez, Dr. M. Gonzalez, Dr. W. Bellizaire, Dr. C. Caldron and Corizon, documented, reported, communicate or otherwise told and informed Defendants, Florida Department of Corrections, Robert E. Smith, Jr., Walt Summers, Julie L. Jones, Dr. Olugbenga Ogunsanwo, Daniel P. Cherry, Dr. Timothy Whalen, Thomas

Reimer, Erich V. Hummel and Corizon, or otherwise had knowledge or should have known that Plaintiffs decedent was not receiving timely and adequate medical care and treatment including but not limited to pain medication, hydration, caloric intake, diagnostic testing, treatment by radiation therapy, treatment by chemotherapy, surgery and/or referral to specialists, timely referral to higher care outside medical facilities and said Count II Defendants, *supra*, failing to act immediately with corrective action were deliberately indifferent to Plaintiff's decedent by turning a blind eye to Plaintiff's serious medical needs.

136.   The unconstitutional conducts of the Defendants as alleged herein implemented and executed the following policies and customs of these Defendants:

a.   Implicit authorization, approval and knowingly acquiescence in the wrongful conduct by said Defendants and/or their employees, agents or ostensible agents in the treatment of inmates;

b.   The use of and acceptance of:   withholding of medical care, withholding of safety measures,

c.   Failure to discipline or terminate personnel known to have engaged in the use of, withholding of medical care, punishment of those suffering medical conditions, or other inappropriate practices and creating an atmosphere were jail personnel believe they will not be disciplined for abusive conduct toward detainee-inmates;

d.   Failure to eliminate prison policies, practices and customs which deviate from applicable federal and state standards for jail operations;

e.   Failure to investigate, report and follow-up on prior incidents involving the use of:;

f.   Creating and encouraging secrecy and a code of silence within the State prison system, Corizon, medical vendor system, the medical care providers including but not limited to the named physicians;

g.   Insulating and protecting the Florida Department of Corrections; Corizon

and medical physicians personnel from civil and criminal liability for the wrongful acts in the treatment of inmates.

     h.     Ignoring the marked upward increase in grievances by inmates pertaining to healthcare.

     i.     Ignoring the upward number of inmate deaths increasing,

     j.     Ignoring the decrease in transfers to outside medical facilities,

     k.     Ignoring the lack of medical staffing resulting in decreased quality healthcare services to inmates and increases wait time ie.. creates delay of

137.    That as a direct and proximate result of the wrongful and unlawful withholding of life sustaining medical care/treatment of Plaintiffs' decedent, on July 14, 2015, Ronald Alexander Howard, II, while suffering from acute squamous cell carcinoma of the left neck, resulting in starvation-dehydration, untreated sepsis, died.

138.    That as a direct and proximate result of the wrongful conduct of Defendants, as alleged herein, all Plaintiffs have suffered and will continue to suffer a loss of love, affection, companionship, care, protection and guidance, and have suffered and will continue in the future to suffer pain, grief, sorrow, anguish, stress, shock and mental suffering.

139.    That pursuant to the provisions of 42 U.S.C. §1988, Plaintiffs are entitled to recover attorney fees and cost of litigation as to the causes of actions alleged under the Constitution and the laws of the United States.

140.    That as a direct and proximate result of the aforementioned conduct of the Defendants, the Estate of Ronald Alexander Howard, II, Deceased, suffered the following:

     a.     Reasonable medical, hospital, funeral and burial expenses;

     b.     Inhumane and tortuous conscious pain and suffering;

     c.     Loss of financial support;

      d.      Loss of service;

      e.      Loss of gifts or other valuable gratuities;

      f.      Loss of comfort, society and companionship;

      g.      Loss of consortium;

      h.      Economic and non-economic compensatory;

      i.      Punitive damages;

      j.      Any and all other damages including but not limited to both attorney fees recoverable under 42 U.S.C. §1983 and §1988 and any and all damages otherwise recoverable under common law.

WHEREFORE, Plaintiff prays that this Honorable Court enter a Judgment in her favor and against Defendants jointly and severally, in an amount in excess of $75,000.00, as well as an award for costs, interest and attorney fees as well as punitive and/or exemplary damages.

July 27, 2017                    Respectfully submitted,

                        FIEGER, FIEGER, KENNEY & HARRINGTON, PC

                By:   s/s  Geoffrey N. Fieger
                     Geoffrey N. Fieger (297305)
                     Attorney for Plaintiffs
                     19390 West Ten Mile Road
                     Southfield, MI  48075
                     (248)-355-5555
                     (248)-355-0218 - facsimile
                     g.fieger@fiegerlaw.com

**<u>JURY DEMAND</u>**

Plaintiffs Estate of Ronald Alexander Howard, II, Deceased by Cathy Pack, as Personal Representatives of the Estate of Ronald Alexander Howard, II, Deceased by and through her attorney, Sean W. Drew, Drew Law Office, hereby request a trial by jury in the above entitled cause of action.

July 27, 2017                                       Respectfully submitted,

                                       FIEGER, FIEGER, KENNEY & HARRINGTON, PC

                              By:   s/s   Geoffrey N. Fieger
                                       Geoffrey N. Fieger (297305)
                                       Attorney for Plaintiffs
                                       19390 West Ten Mile Road
                                       Southfield, MI   48075
                                       (248)-355-5555
                                       (248)-355-0218 - facsimile
                                        g.fieger@fiegerlaw.com