UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CATHY PACK, as Personal
Representative of the Estate
of RONALD ALEXANDER
HOWARD, II, Deceased,

      Plaintiff,

v.                              CASE NO. 3:17-cv-778-J-34JBT

DR. MARTIN I. HOLZMAN, MD, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on the following:

> 1) Defendant Joseph Fares, M.D.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 197) and Plaintiff's Response thereto (Doc. 205);

> 2) Defendant Vernon Montoya, M.D.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 184) and Plaintiff's Response thereto (Doc. 200);

> 3) Defendant Martin I. Holzman, M.D.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 187) and Plaintiff's Response thereto (Doc. 202);

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

4) Defendant Osvaldo Contarini, M.D.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 186) and Plaintiff's Response thereto (Doc. 201); and

5) Defendants Julie L. Jones, Thomas Reimers, and Dr. Olugbenga Ogunsanwo's (collectively "Administrators") Motion to Dismiss Count XI of the Second Amended Complaint (Doc. 198) and Plaintiff's Response thereto (Doc. 208).

The Motions were referred to the undersigned for a report and recommendation regarding an appropriate resolution. (Doc. 220.) For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion filed by Dr. Fares (Doc. 197) be **DENIED**;[2] that Dr. Fares be directed to answer the Second Amended Complaint ("SAC") (Doc. 179) within twenty days from the Court's order on this Report and Recommendation; that the Motions filed by Dr. Montoya (Doc. 184), Dr. Holzman (Doc. 187), Dr. Contarini (Doc. 186), and the Administrators (Doc. 198) be **GRANTED**; and that Counts II, III, IV, and XI of the SAC be **DISMISSED with prejudice**.[3]

## I.   Background

This case arises following the death of Ronald Alexander Howard, II while he was incarcerated by the Florida Department of Corrections ("FDOC"). According to

---

[2] This recommendation is based solely on the non-conclusory allegations of the SAC which, as set forth herein, must be accepted as true at this stage of the proceedings. It does not address any potential summary judgment motion or the ultimate merits of Plaintiff's claim.

[3] The Court has discretion to dismiss these counts with prejudice. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002) (en banc).

the SAC, Mr. Howard developed cancer while he was incarcerated, he did not receive proper medical treatment, and he died as a result of the lack of proper treatment.  Plaintiff filed suit against numerous Defendants pursuant to 42 U.S.C. §§ 1983 & 1988 alleging violations of the Eighth and Fourteenth Amendments.  (*See* Doc. 179.)   Relevant to the instant Motions, Plaintiff brings claims against the following Defendants for deliberate indifference to Mr. Howard's serious medical needs: Dr. Fares (Count I); Dr. Montoya (Count II); Dr. Holzman (Count III); Dr. Contarini (Count IV); and the Administrators (Count XI).  The moving Defendants seek dismissal of the claims against them pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).

In general, the SAC alleges that after being sentenced in Marion County Circuit Court on September 18, 2009, Mr. Howard was incarcerated at Holmes Correctional Institution ("Holmes").  (Doc. 179 at 5.)   At various times, he was transferred to and admitted inpatient at the Reception and Medical Center ("RMC") and Memorial Hospital of Jacksonville ("MHJ").  (*Id.* at 3, 5.)

Mr. Howard, who was 23 years old at the time of his death on July 14, 2015, began seeking medical treatment for swelling in his neck in September 2014.  (*Id.* at 6, 17.)   He presented to numerous medical professionals and personnel at Holmes, RMC, and MHJ between September 2014 and the date of his death.  (*Id.* at 6–17.)   Two biopsies conducted in December 2014 and February 2015 led to a diagnosis of squamous cell carcinoma in Mr. Howard's neck.  (*Id.* at 11–13.)   In

March and April of 2015, the cancerous tumor was too large for surgery so radiation and/or chemotherapy were recommended in an attempt to shrink the tumor to an operable size. (*Id.* at 13–16.) However, with the exception of two days of chemotherapy during a hospitalization at MHJ, which caused Mr. Howard to go into cardiac arrest, no treatment took place. (*Id.* at 16–17.) By June 2015, only palliative care was recommended. (*Id.*) Prior to his death in July 2015 as a result of the cancer, Mr. Howard became a quadriplegic and suffered from pneumonia, dehydration, malnourishment, and a sepsis infection.[4] (*Id.* at 16–17.)

## II.   Applicable Standards

### A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the SAC sets forth sufficient factual allegations to state a claim upon which relief can be granted. In evaluating whether Plaintiff has stated a claim, the Court must determine whether the SAC satisfies Federal Rule of Civil Procedure 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To satisfy this standard, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Labels and

---

[4] The undersigned recommends, and the moving Defendants do not argue otherwise, that Mr. Howard had a serious medical need during the relevant time period.

conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Iqbal*, 556 U.S. at 678. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Though detailed factual allegations are not required to satisfy this standard, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Indeed, allegations showing "[t]he mere possibility the defendant acted unlawfully [are] insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *Sinaltrainal*, 578 F.3d at 1260. Although the Court must accept well-pled facts as true, it is not required to accept Plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, a court is "not required to draw

5

plaintiff's inference." *Sinaltrainal*, 578 F.3d at 1260 (internal citation and quotations

omitted).  "Similarly, unwarranted deductions of fact in a complaint are not admitted

as true for the purpose of testing the sufficiency of plaintiff's allegations."  *Id.*

(internal citation and quotations omitted); *see also Iqbal*, 556 U.S. at 681 (stating

conclusory allegations are "not entitled to be assumed true").

## B.    Deliberate Indifference to Serious Medical Needs

As the Eleventh Circuit has stated:

> Substantively, [t]o prevail on a claim under § 1983, a
> plaintiff must demonstrate both (1) that the defendant
> deprived [him] of a right secured under the Constitution or
> federal law and (2) that such a deprivation occurred under
> color of state law.  The Eighth Amendment of the United
> States Constitution forbids cruel and unusual
> punishments.  The Eighth Amendment is applicable to the
> states through the Fourteenth Amendment.  The Supreme
> Court has interpreted the Eighth Amendment to include
> deliberate indifference to serious medical needs of
> prisoners.  Every claim by a prisoner that he did not
> receive medical treatment, however, is not a violation of
> the Eighth Amendment.
>
> To prevail on a claim of inadequate medical treatment, a
> prisoner must satisfy an objective and a subjective
> requirement.   The plaintiff must show an objectively
> serious deprivation of medical care by demonstrating (1)
> an objectively serious medical need . . . that, if left
> unattended, poses a substantial risk of serious harm, and
> (2) that the prison official's response to that need was poor
> enough to constitute an unnecessary and wanton infliction
> of pain, and not merely accidental inadequacy, negligence
> in diagnosis or treatment, or even medical malpractice
> actionable under state law.  A serious medical need is one
> that has been diagnosed by a physician as mandating
> treatment or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention.

A prisoner must also show a prison official's subjective intent to punish by demonstrating that the official acted with deliberate indifference. To satisfy this requirement, a prisoner must show the prison official's: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all. A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Likewise, a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference. An Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment.

*Bingham v. Thomas*, 654 F.3d 1171, 1175–76 (11th Cir. 2011) (citations and quotations omitted).

III.   **Analysis**

A.   **Structure of the SAC**

In addition to arguing that Plaintiff has failed to state a claim, some of the moving Defendants, including Dr. Fares, also argue that the SAC constitutes an

7

impermissible shotgun pleading.[5]  The Court previously struck Plaintiff's initial and amended complaints because they were shotgun pleadings, and instructed Plaintiff to cure certain pleading defects.  (Docs. 7, 176, 178.)  The undersigned recommends that, although the SAC is not a model of clarity, Plaintiff has substantially complied with the Court's prior instructions and the SAC should not be dismissed as a shotgun pleading.

However, although not grounds for dismissal, Plaintiff's pleading method in the SAC remains overly broad and conclusory.  Specifically, there are many boilerplate, conclusory allegations against each Defendant in each count regarding the various ways in which each Defendant exhibited deliberate indifference to Mr. Howard's serious medical needs.  (*See, e.g.*, Doc. 179 at 20–21, 24–25, 28–29, 33–34, 63–64.)  These allegations, many of which are presented in bullet-point lists, are repeated nearly verbatim in most of the counts.  (*See id.*)  For example, Plaintiff's conclusory allegations regarding pain management, which are repeated in most counts, state in part that each Defendant "[f]ailed to implement a pain management plan" for Mr. Howard, and "[f]ailed to provide necessary and required pain medication" to Mr. Howard.  (*See id.* at 20, 24, 28, 33.)  Plaintiff then adds limited allegations that are specific to each Defendant in each count, which supplement the

---

[5] "The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

factual allegations set forth at the beginning of the SAC.  As a result of this pleading method, each of the moving Defendants is accused of violating Mr. Howard's constitutional rights in numerous ways that are not supported by the non-conclusory allegations in the SAC.

In accordance with Eleventh Circuit law, the undersigned has disregarded these conclusory allegations and has addressed only the non-conclusory factual allegations that support each claim.  *See McCullough v. Finley*, Case No. 17-11554, - - - F.3d - - -, 2018 WL 5318146, at *5 (11th Cir. Oct. 29, 2018) ("To decide whether a complaint survives a motion to dismiss, we use a two-step framework.  First, we identify the allegations that are no more than conclusions.  Conclusory allegations are not entitled to the assumption of truth.  Second, after disregarding conclusory allegations, we assume any remaining factual allegations are true and determine whether those factual allegations plausibly give rise to an entitlement to relief.") (citations and quotations omitted).  For the reasons set forth below, the undersigned recommends that Plaintiff has sufficiently stated a claim against Dr. Fares, but not against the other movants.[6]

### B.   Content of the SAC

In general, the allegations of the SAC raise concerns regarding the delay in

---

[6] Although the SAC purports to bring claims against all Defendants in their individual and official capacities, the official capacity claims against Drs. Fares, Montoya, Holzman, and Contarini were voluntarily dismissed.  (Docs. 203 & 204.)

diagnosing and treating Mr. Howard.[7]  First, there was a lengthy delay in Mr. Howard being diagnosed with cancer.  Although he began seeking medical treatment for swelling in his neck on September 8, 2014, he was not diagnosed with cancer until December 16, 2014, following a biopsy recommended by Dr. Contarini.  (*Id.* at 6–11.)  Although not clear from the allegations in the SAC, it appears that a failure in communication regarding Mr. Howard's cancer diagnosis resulted in Dr. Fares performing a second biopsy thereafter.  (*Id.* at 9–13.)  Specifically, Dr. Fares first saw Mr. Howard on November 18, 2014, at which time he planned to do a biopsy.  (*Id.* at 9–10.)  However, that biopsy was not done.  When Dr. Fares saw Mr. Howard again on January 21, 2015, apparently without knowledge of Mr. Howard's previous biopsy or cancer diagnosis, Dr. Fares scheduled another biopsy that he did not perform until February 26, 2015.  (*Id.* at 12.)  The second biopsy also resulted in a diagnosis of cancer.  (*Id.* at 12–13.)  Plaintiff alleges generally that Dr. Fares was primarily responsible for the delay in the performance of the second biopsy.  (*Id.* at 17–21.)

Additionally, the SAC alleges that, with the exception of two days of chemotherapy during a hospitalization at MHJ from April 13, 2015 until May 22, 2015, there was a complete lack of medical treatment for Mr. Howard despite the

---

[7] Because the factual allegations in the SAC appear to be largely a recitation of medical records from numerous doctors and facilities, there are unexplained gaps in the course of events.  Thus, at times, the allegations are disjointed and raise more questions than they answer.  Nevertheless, the undersigned has accepted the non-conclusory allegations as true, and has drawn reasonable inferences therefrom.

cancer diagnosis and recommendations for chemotherapy and radiation. (*Id.* at 11–17.) Plaintiff alleges generally that Dr. Montoya and Dr. Holzman were primarily responsible for the lack of sufficient chemotherapy and radiation therapy. (*Id.* at 21–30.)

### C.   Individual Counts

#### 1.   Count I - Dr. Fares

Plaintiff's claim against Dr. Fares is based primarily on the 100-day delay between Dr. Fares' plan for a biopsy on Mr. Howard's neck on November 18, 2014, and his performance of that biopsy, the second of its kind, on February 26, 2015. The undersigned recommends that Plaintiff has sufficiently stated a deliberate indifference claim against Dr. Fares based on that delay.

According to the SAC, Dr. Fares was a board certified physician in Otolaryngology (ENT) who first examined Mr. Howard on November 18, 2014. (*Id.* at 9–10, 17.) At that time, Dr. Fares noted in part that Mr. Howard's left tonsil lesion was suspicious for malignancy and planned for a biopsy to be performed. (*Id.* at 9–10, 18.) That biopsy was not performed. Although a biopsy was later performed on December 12, 2014, on recommendation of Dr. Contarini, and Mr. Howard was diagnosed with squamous cell carcinoma on December 16, 2014, Dr. Fares was apparently unaware of this biopsy. (*Id.* at 11.) Thus, he scheduled another biopsy when he saw Mr. Howard on January 21, 2015. (*Id.* at 12, 19.) This biopsy was not performed until February 26, 2015. (*Id.* at 12–13, 19.) It also showed squamous cell

11

carcinoma.  (*Id.*)  It is unclear why Dr. Fares apparently did not know about the results of the first biopsy, or what caused the delay in the performance of the second biopsy.

Following the second biopsy, Mr. Howard was evaluated for radiation therapy between March 11, 2015 and March 26, 2015.  (*Id.* at 13–14.)  Dr. Fares did not see Mr. Howard again until March 29, 2015, at which time he observed that Mr. Howard seemed to be deteriorating very rapidly.  (*Id.* at 14.)  He also noted that the mass was too large for surgery and recommended radiation to shrink the tumor.  (*Id.* at 14, 19.) However, Dr. Montoya's notes from April 7, 2015 indicate that radiation therapy was being held due to the size of the tumor, and that Mr. Howard would begin chemotherapy.  (*Id.* at 15.)  On April 13, 2015, Dr. Fares saw Mr. Howard for the last time and explained to him that at that time the tumor was too large to be operable. (*Id.* at 16, 19.)

The non-conclusory allegations in Count I relate primarily to the 100-day delay between Dr. Fares' initial examination of Mr. Howard and the performance of the second biopsy.  (*Id.* at 18–19.)  In his Motion, Dr. Fares raises a factual issue, arguing that the allegation that he examined Mr. Howard on November 18, 2014 is inaccurate. (Doc. 197 at 7–9.)  Rather, Dr. Fares states that he did not examine Mr. Howard for the first time until January 21, 2015.  (*Id.*)  Thus, Dr. Fares argues that there was no unreasonable delay in the performance of the biopsy or any other

12

deliberate indifference on his part.[8]  (*Id.*)

At the motion to dismiss stage, the non-conclusory factual allegations of the SAC must be accepted as true.  Regardless of why Dr. Fares apparently did not know about the first biopsy and Mr. Howard's initial cancer diagnosis, Plaintiff sufficiently alleges that Dr. Fares waited 100 days, from November 18, 2014 to February 26, 2015, to perform a biopsy.  (Doc. 179 at 18–19.)  It appears that no cancer treatment was provided during this time.  (*See id.* at 9–13.)  Moreover, from the allegations of the SAC, it may be reasonably inferred that given the aggressive nature of Mr. Howard's cancer and the rate at which his health declined, this delay was critical.  (*See id.* at 6–17.)  Therefore, the undersigned recommends that Dr. Fares' Motion be denied.  *See Taylor v. Adams*, 221 F.3d 1254, 1259–60 (11th Cir. 2000) (recognizing that deliberate indifference may be shown by "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified") (quotations omitted); *Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994) ("The law was also clearly established that the right to medical care [for prisoners] may include diagnostic tests

---

[8] Although Dr. Fares argues alternatively that the allegations of the SAC do not establish deliberate indifference "even if [he] saw the patient on November 18, 2014," this argument is still based on the assertion that he did not examine Mr. Howard until January 21, 2015.  (Doc. 197 at 8–9.)

known to be necessary, not just medicinal and surgical care.").[9]

### 2.    Count II - Dr. Montoya

Plaintiff's claim against Dr. Montoya is based primarily on his alleged failure to ensure that Mr. Howard received sufficient radiation and/or chemotherapy.  The undersigned recommends that Plaintiff has failed to state a deliberate indifference claim against Dr. Montoya.

According to the SAC, Dr. Montoya was a board certified physician in Oncology/Hematology who first saw Mr. Howard on March 3, 2015 at RMC, after Mr. Howard had already been diagnosed with cancer.  (Doc. 179 at 13, 22–23.)  At that time, Dr. Montoya issued an "emergent" consult request to Dr. Holzman for Mr. Howard to be evaluated for radiation therapy.  (*Id.* at 13, 23.)  As a result, Mr. Howard was seen by Dr. Holzman on March 11, 2015.  (*Id.*)  At that time, Dr. Holzman made several recommendations, some of which included the designation "ASAP," apparently to evaluate and/or prepare Mr. Howard for radiation.  (*Id.* at 13.) At least some of Dr. Holzman's recommendations and/or orders, including a dental exam and referral to a neurologist, were completed on March 17 and 26, 2015, respectively.  (*Id.* at 13–14.)

Mr. Howard was admitted to MHJ from March 27, 2015 to March 30, 2015.

---

[9] Because the undersigned recommends that Count I proceed against Dr. Fares based on the alleged delay in performing a biopsy, the undersigned further recommends that the Court need not address whether Plaintiff has adequately alleged any other basis for a deliberate indifference claim against Dr. Fares.

(*Id.* at 14–15.)   Dr. Fares saw Mr. Howard during this hospitalization and recommended radiation therapy to shrink the tumor to an operable size.  (*Id.* at 14.) Upon discharge from MHJ to RMC on March 30, 2015, Mr. Howard was scheduled to undergo outpatient chemotherapy and radiation, and was directed to follow up with Dr. Montoya for evaluation and treatment.  (*Id.* at 15.)  On April 7, 2015, Dr. Montoya saw Mr. Howard for the second time.  (*Id.* at 15, 23.)  At that time, Dr. Montoya determined that radiation would be held due to the size of the tumor, and that Mr. Howard would instead begin chemotherapy and receive it every four weeks. (*Id.* at 15, 23.)

Six days later, however, on April 13, 2015, Mr. Howard was found on the floor of RMC in an altered mental state.  (*Id.* at 15.)  He was admitted to MHJ and remained there from April 13, 2015 until May 22, 2015.  (*Id.* at 15–16.)  While at MHJ, Mr. Howard underwent chemotherapy for two days, which caused him to go into cardiac arrest.  (*Id.* at 16.)

Dr. Montoya saw Mr. Howard for the last time on June 2, 2015 at RMC, at which time he indicated that although he had planned to start Mr. Howard on chemotherapy, Mr. Howard "never received the chemotherapy."  (*Id.* at 16–17, 24.) Dr. Montoya indicated that he doubted chemotherapy would be beneficial anymore, and he recommended palliative care and early release from incarceration, if possible.  (*Id.*)

The undersigned recommends that Plaintiff has failed to state a deliberate

indifference claim against Dr. Montoya.  During his first visit with Mr. Howard on March 3, 2015, Dr. Montoya issued an "emergent" consult request to Dr. Holzman to evaluate Mr. Howard for radiation therapy, which Dr. Holzman did.  (*Id.* at 13–14, 23.)

During his second visit with Mr. Howard on April 7, 2015, Dr. Montoya determined that chemotherapy, rather than radiation, would be provided for a medical reason, i.e., the size of Mr. Howard's tumor.  (*Id.* at 15, 23.)  However, six days later, Mr. Howard was admitted to MHJ for over one month, during which time Dr. Montoya did not see Mr. Howard.  (*Id.* at 15–16.)  Nevertheless, chemotherapy was attempted at MHJ, but Mr. Howard suffered a severe adverse reaction.  (*Id.* at 16.)  By the time Mr. Howard was discharged from MHJ and seen again by Dr. Montoya for the last time on June 2, 2015, it was too late for chemotherapy to be effective.  (*Id.* at 16–17, 24.)

In short, the undersigned recommends that the non-conclusory allegations in Count II are insufficient to state a deliberate indifference claim against Dr. Montoya. Although the allegations of the SAC raise the possibility that Dr. Montoya might be liable, they do not give rise to a reasonable inference of deliberate indifference. *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557).  Thus, the undersigned recommends that Dr. Montoya's Motion be granted and that Count II

of the SAC be dismissed with prejudice.

### 3.    Count III - Dr. Holzman

Plaintiff's claim against Dr. Holzman is based primarily on his alleged failure to ensure that Mr. Howard received radiation therapy.   The undersigned recommends that Plaintiff has failed to state a deliberate indifference claim against Dr. Holzman.

According to the SAC, Dr. Holzman was a board certified physician in Radiation Oncology who saw Mr. Howard only once, on March 11, 2015, after Mr. Howard had been diagnosed with cancer.   (Doc. 179 at 13, 26–28.)   The appointment followed an emergent consult request by Dr. Montoya on March 3, 2015 that Mr. Howard be evaluated for radiation therapy.  (*Id.* at 13.)  On March 11, 2015, Dr. Holzman made recommendations and/or issued orders, some of which included the designation "ASAP," to evaluate and/or prepare Mr. Howard for radiation therapy. (*Id.* at 13, 27–28.)  However, Dr. Holzman's notes apparently do not indicate that he actually recommended or ordered radiation therapy.  (*Id.* at 13.)  At least some of Dr. Holzman's recommendations and/or orders, including a dental exam and referral to a neurologist, were completed on March 17 and 26, 2015, respectively.  (*Id.* at 13–14, 27–28.)  Dr. Holzman did not see Mr. Howard again.  Rather, on March 29, 2015, Dr. Fares recommended radiation therapy for Mr. Howard.[10]  (*Id.* at 14.)

---

[10] In addition, the general allegations in paragraph 114 directly conflict with the specific allegations in paragraphs 70–71 of the SAC.  Paragraphs 70–71 allege that on
(continued...)

The allegations in Count III relate primarily to Dr. Holzman's alleged failure to ensure that Mr. Howard received radiation therapy. (*Id.* at 27–28.) For example, Plaintiff alleges in a conclusory manner that "Dr. Holzman[] never commenced radiation therapy even though he ordered it," that he did not follow "his own recommendation for radiation therapy," and that he did not "institute his own ordered treatment plan . . . ." (*Id.* at 28.) However, as noted above, the specific allegations of the SAC do not indicate that Dr. Holzman ever recommended or ordered radiation therapy. Rather, it appears that Dr. Holzman merely recommended and/or ordered tests to evaluate and/or prepare Mr. Howard for potential radiation therapy, and he never saw Mr. Howard again. (*Id.* at 13–14.) Thus, the Court need not accept as true Plaintiff's general, conclusory allegations that Dr. Holzman recommended and/or ordered radiation. *See Pompano Helicopters, Inc. v. Westwood One, Inc.*, Case No. 07-61737-CIV, 2008 WL 906749, at *1 (S.D. Fla. Apr. 3, 2008) ("Where a general allegation of facts conflicts with a specific allegation of facts, the Court finds that the specific allegation is to be taken as true for purposes of a motion to dismiss.").

Regardless, Plaintiff also alleges that on April 7, 2015, "Dr. Montoya's notes

---

[10](...continued)
March 30, 2015, Dr. Chang discharged Mr. Howard from MHJ, and indicated that Mr. Howard should follow up with *Dr. Montoya* for radiation. (Doc. 179 at 15.) Similarly, Dr. Jean Dure requested an emergency consultation for treatment with *Dr. Montoya*. (*Id.*) Paragraph 114 contradictorily alleges that Dr. Chang and Dr. Dure indicated that Mr. Howard should be seen and treated by *Dr. Holzman*, rather than Dr. Montoya. (*Id.* at 27.) At any rate, there are no allegations that Dr. Holzman ever saw Mr. Howard after March 11, 2015.

indicate that radiation therapy is being held due to the size of the tumor" and that Mr. Howard "will start chemotherapy." (*Id.* at 15.)  Thus, even if Plaintiff's conclusory, conflicting allegations that Dr. Holzman recommended and/or ordered radiation therapy are accepted as true, Plaintiff still fails to state a deliberate indifference claim against Dr. Holzman because, according to the SAC, radiation therapy was held for a medical reason, i.e., the size of Mr. Howard's tumor, and chemotherapy was planned instead.  *Cf. Bingham*, 654 F.3d at 1176 ("[A] defendant who delays necessary treatment for *non-medical reasons* may exhibit deliberate indifference.") (emphasis added); *see also Turner v. Solorzano*, 228 F. App'x 922, 924 (11th Cir. 2007) ("Turner cannot establish deliberate indifference based solely on his desire to receive some other kind of care.").[11]  Thus, the undersigned recommends that Dr. Holzman's Motion be granted and that Count III of the SAC be dismissed with prejudice.[12]

### 4.    Count IV - Dr. Contarini

The basis for Plaintiff's claim against Dr. Contarini is not entirely clear. However, the only non-conclusory allegations in Count IV establish that Dr. Contarini

---

[11] Although unpublished Eleventh Circuit opinions are not binding precedent, they may be persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

[12] The remainder of the allegations pertaining to Dr. Holzman, including those regarding pain management, are boilerplate, conclusory allegations that Plaintiff has alleged against many Defendants in this case.  They are insufficient to state any type of deliberate indifference claim against Dr. Holzman.

saw Mr. Howard only twice, and that both visits resulted in Dr. Contarini recommending emergency action. Thus, the undersigned recommends that Plaintiff has failed to state a deliberate indifference claim against Dr. Contarini.

According to the SAC, Dr. Contarini was a board certified physician in Radiation Oncology, who saw Mr. Howard for the first time on November 25, 2014 "in surgery."[13] (Doc. 179 at 11, 30–32.) Dr. Contarini observed a large mass on Mr. Howard's left neck and recommended that Mr. Howard present to MHJ for a core biopsy "ASAP." (*Id.*) The biopsy was performed on December 12, 2014, and Mr. Howard was diagnosed with squamous cell carcinoma on December 16, 2014. (*Id.* at 11, 32.) On January 6, 2015, Dr. Contarini saw Mr. Howard again "in surgery," reviewed Mr. Howard's diagnosis, and recommended: "Emergent to Fares MD for January 7, 2015." (*Id.* at 11.) However, for some unknown reason, Dr. Fares did not see Mr. Howard until January 21, 2015. (*Id.* at 11–12.) At that time, Dr. Fares, who apparently did not know about the prior biopsy and cancer diagnosis, scheduled a second biopsy that he did not perform until February 26, 2018. (*Id.* at 11–12, 32.) Dr. Contarini did not see Mr. Howard again. The remainder of the allegations in Count IV, including those regarding pain management, are conclusory.

As set forth above, the only non-conclusory allegations in Count IV establish that each time Dr. Contarini saw Mr. Howard, he recommended emergency action,

---

[13] It is unclear from the SAC why Dr. Contarini would have seen Mr. Howard "in surgery," what type of surgery was being performed, or why a Radiation Oncologist would be performing surgery.

i.e., a biopsy "ASAP" and an "Emergent" appointment with Dr. Fares for the next day. (*Id.* at 11, 31–32.)  Although the biopsy was not performed immediately and Mr. Howard did not see Dr. Fares the next day, these allegations are merely consistent with possible liability on Dr. Contarini's part.  The undersigned recommends that they are insufficient to give rise to a reasonable inference that Dr. Contarini was deliberately indifferent to Mr. Howard's serious medical needs.  Thus, Plaintiff has not pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557).  Therefore, the undersigned recommends that Dr. Contarini's Motion be granted, and that Count IV of the SAC be dismissed with prejudice.

### 5.    Count XI - The Administrators

Plaintiff's claim against the Administrators is based primarily on their alleged failure to correct deprivations of prisoners' rights despite a history of widespread abuse that put them on notice of the need to do so.  The undersigned recommends that Plaintiff has failed to state a deliberate indifference claim against the Administrators.

According to the SAC, the Administrators, i.e., Dr. Ogunsanwo, Assistant Secretary of Health Services of FDOC, and Dr. Reimers, Health Service Director of

FDOC, were in charge of oversight and compliance of Defendant Corizon Health Inc. ("Corizon"), FDOC's medical vendor.[14]   (Doc. 179 at 60–61.)   Plaintiff alleges generally that the Administrators violated 42 U.S.C. § 1983 by failing to properly supervise and monitor Corizon to ensure that Corizon was providing adquate medical care to prisoners.   (*Id.*)

Preliminarily, the SAC alleges that the Administrators are being sued in both their official and individual capacities, and Plaintiff seeks only damages from the Administrators.   (*Id.* at 2, 64–65.)   Although Plaintiff has indicated that she intends to voluntarily dismiss the official capacity claims against the Administrators, she has not done so.   (*See* Doc. 208 at 10.)   To the extent Plaintiff is attempting to sue the Administrators in their official capacities, the undersigned recommends that the Eleventh Amendment bars suit.   *See Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (recognizing that "the eleventh amendment has been applied to bar prisoner's section 1983 damage claims brought in federal court against prison officials in their official capacities").   Thus, the undersigned will address Plaintiff's claims against the Administrators in their individual capacities only.

Regarding supervisory officials and liability under section 1983, the Eleventh Circuit has stated as follows:

> "It is well established in this Circuit that supervisory officials
> are not liable under § 1983 for the unconstitutional acts of

---

[14] The claim raised against Defendant Julie L. Jones, who is also named in Count XI, was dismissed.  (Doc. 196.)

their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). Therefore, a plaintiff seeking to hold a supervisor liable for constitutional violations must show that the supervisor either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation.  *Id.*

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

> *Id.* [. . .]  "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation mark omitted).  In other words, "the standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  *Cottone*, 326 F.3d at 1360 (internal quotation marks omitted).

*Harrison v. Culliver*, 746 F.3d 1288, 1298–99 (11th Cir. 2014).

Plaintiff alleges that the Administrators received a copy of a letter dated September 26, 2014 from FDOC to Corizon in which FDOC indicated that Corizon had failed to provide the standard of care required by contract.  (Doc. 179 at 61.) Specifically, pursuant to a FDOC audit, Corizon was found to be deficient in several

23

areas, and the letter noted that "corrective action plans are not being carried out and that the level of care continues to fall below the contractually required standard. . . . Patient care issues, utilization management, and communication . . . all three of these areas continue to be cause for concern." (*Id.*) Plaintiff alleges that the Administrators "failed to take corrective actions with respect to such knowledge."[15] (*Id.*)

Plaintiff also alleges in conclusory terms:

> Before September 2014, there was a marked increase in grievances by inmates at Holmes, RMC and MHJ, regarding healthcare[,] . . . a marked increase in the number of inmate deaths at Holmes, RMC and MHJ, pertaining to the quality of healthcare[,] . . . a marked decrease in the number of inmate medical transfers to outside medical facilities in Holmes, RMC, and MHJ[,] . . . [and] a lack of medical physician staffing resulting in decreased quality of healthcare to inmates which resulted with an increased waiting time/delay for inmate medical treatment . . . .

(*Id.* at 62.) Plaintiff alleges that the Administrators knew or should have known about these issues and that "[d]espite such knowledge, [the Administrators] did not take timely action to remedy the systemic failure of the prison healthcare system." (*Id.*)

The allegations in Count XI indicate that Plaintiff is attempting to state a claim against the Administrators based on an alleged history of widespread abuse that put the Administrators on notice of the need to correct the alleged deprivations, and that they failed to do so. *See Harrison*, 746 F.3d at 1298–99. The undersigned

---

[15] Notably, it appears that the subject letter itself is corrective action.

recommends that Plaintiff has failed to state a claim against the Administrators because Plaintiff's general, conclusory allegations fail to sufficiently allege that the subject deprivations were "obvious, flagrant, rampant and of continued duration" as required.  *See id.*

Although Plaintiff references a letter following a FDOC audit of Corizon, she fails to allege any information regarding the specific time frame at issue, any specific instances of deprivations, the number thereof, or the specific nature thereof.  The same is true of Plaintiff's conclusory allegations regarding inmate grievances, deaths, medical transfers, and physician staffing.  Plaintiff also fails to sufficiently allege what specific actions these specific Administrators were authorized to take, and should have taken, from September 26, 2014 until Mr. Howard's death on July 14, 2015.  In short, Plaintiff's general allegations are insufficient to state a claim against the Administrators given the "extremely rigorous" standard for supervisory liability.  *See id.*; *Sharbaugh Estate of Martin v. Beaudry*, Case No. 3:16-cv-126/MCR/EMT, 2017 WL 5992465, at *5 (N.D. Fla. Feb. 27, 2017) (finding plaintiff's "conclusory allegations" were "insufficient under *Iqbal* and *Twombly* to state with plausibility the necessary culpability required for individual supervisory liability"). Thus, the undersigned recommends that the Administrators' Motion be granted, and that Count XI of the SAC be dismissed with prejudice.

## IV.    Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1.    Dr. Fares' Motion (**Doc. 197**) be **DENIED**, and that Dr. Fares be directed to answer the SAC (Doc. 179) within 20 days of the Court's order on this Report and Recommendation.

2.    Dr. Montoya's Motion (**Doc. 184**), Dr. Holzman's Motion (**Doc. 187**), Dr. Contarini's Motion (**Doc. 186**), and the Administrators' Motion (**Doc. 198**) be **GRANTED**, and that Counts II, III, IV, and XI of the SAC be **DISMISSED with prejudice**.

**DONE AND ENTERED** at Jacksonville, Florida, on December 5, 2018.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record